## DAVID PENROD *against* ABRAHAM MORRISON, administrator of JAMES MITCHELL.

### IN ERROR.

A being indebted to B, held certain choses in action, which he assigned to C without consideration, and took the benefit of the insolvent law. *Held*: That if this arrangement was made between A and C for the purpose of preventing B from recovering his debt, that they are both liable in an action for a conspiracy at the suit of B.

Such action will not abate upon the death of the plaintiff, but will survive to his personal representative.

*Quære.* Will it survive, upon the death of the defendant, against his personal representative?

ERROR to the Common Pleas of Somerset county.

This was an action on the case for a conspiracy, brought by *James Mitchell* in his life time, against *David Penrod,* the plaintiff in error, and *Alexander Morrison.* *Penrod* alone made defence; judgment was obtained against *Morrison* by default. The plaintiff in his life-time had obtained three several verdicts and judgments against the defendants, for twelve, sixteen and eighteen hundred dollars; all of which were reversed by the Supreme Court: after which he died: his death having been suggested upon the record, a *scire facias* was issued to the defendant, to shew cause why his administrator, *Abraham Morrison,* should not be substituted. To this writ the defendant demurred; on the ground, that the action was abated by the death of the plaintiff. The plaintiff joined in the demurrer, and the Court *(Young* president,) gave judgment against the defendant, *quod respondeat ouster.* This was the subject of the first bill of exception.

The plaintiff's declaration set out specially the following facts. That in 1815 *Alexander Morrison* entered into a contract with the Stoystown and Greensburg turnpike company, to make one mile of the road, at $15 50 a perch; subsequently he made a contract with *James Mitchell* to make a part of that mile of road at $13 50 a perch, who completed his contract; whereby *Morrison* became indebted to *Mitchell* in a sum of money, for which a suit was brought, and rule of reference entered by the plaintiff, in March 1819: arbitrators were chosen, who met several times, from the 22d April until the 17th May, when they made a report in favour of the plaintiff, for $1,321 87, from which there was no appeal. Upon this judgment a *fi. fa.* was issued, which was returned *nulla bona.*

(David Penrod *v.* Abraham Morrison.)

The declaration of the plaintiff, then, concludes thus, "although in truth, the said *Alexander Morrison*, at the time the said *fi. fa.* was in the hands of the sheriff, had sufficient effects wherewith to satisfy the same, which the said *Alexander* then and there refused to deliver or discover to the said sheriff, but fraudulently concealed the same. Yet the said *David Penrod* and *Alexander Morrison*, not being ignorant of the premises, but well knowing the same, the first day of August in the year last aforesaid, at the county aforesaid, secretly, falsely, fraudulently and corruptly did combine and conspire together, the said *James Mitchell* of the said thirteen hundred and twenty-one dollars and eighty-seven cents, so awarded to him as aforesaid, to defraud, in pursuance of the said false, corrupt, and fraudulent design, did corruptly combine and agree together that the said *Alexander* should assign and make over to him the said *David*, all the property and effects of the said *Alexander*, and that the said *Alexander* should surrender himself to the jail of said county, and there apply for and take the benefit of the acts of assembly made for the relief of poor and insolvent debtors, and in pursuance and execution of their said false, corrupt, and fraudulent design, he the said *Alexander* did on the day and year last aforesaid, at the county aforesaid, without any consideration whatever, other than his corrupt design to defraud the said *James*, as aforesaid, assign, transfer and make over, to the said *David*, all his property and effects, to the amount of two thousand dollars, and upwards; and the said *David* in pursuance and execution of the said false, corrupt and fraudulent design, so as aforesaid entered into by and between the said *David* and the said *Alexander*, without any consideration other than his design to defraud the said *James*, as aforesaid, on the day and year last aforesaid, at the county aforesaid, did take and accept of the said assignment and transfer of property as aforesaid, so made by the said *Alexander* to the said *David*, as aforesaid. And in further execution of the said conspiracy, so falsely, fraudulently and corruptly entered into by the said *David* and *Alexander* as aforesaid, he the said *Alexander* afterwards and before the institution of this suit, to defraud the said *James* of the money so awarded to him as aforesaid, did corruptly and fraudulently surrender himself to the jail of said county, and the said *Alexander*, in further execution of said fraudulent design so as aforesaid formed with the said *David*, afterwards and before the institution of this suit, did falsely and fraudulently procure himself to be discharged from his said imprisonment by virtue of the act of assembly aforesaid, made for the relief of poor and insolvent debtors, under the false and fraudulent pretence that he was unable to support himself in prison. By reason of which said false, corrupt, and fraudulent combination and conspiracy, so

as aforesaid entered into, by and between the said *Alexander* and *David,* with design as aforesaid, to defraud the said *James* out of his debt aforesaid, so as aforesaid due and payable to the said *James* by the said *Alexander,* the said *James* saith he hath been prevented from recovering his said debt, and that he is injured and hath suffered damage three thousand dollars, and therefore he brings suit, &c.

To this declaration the defendant plead not guilty. Issue.

The plaintiff having given in evidence the record of the judgment which he obtained against *Morrison,* proved, that after the road had been completed according to contract, the turnpike company being unable to pay, *Morrison* procured their certificates of the amount due to him. He also gave in evidence the record of a judgment before a justice of the peace, *Thomas Howard,* for the use of *David Penrod* against *Alexander Morrison,* for $13 28, obtained 26th May, 1819, and an execution which issued thereon, upon which *Morrison* was imprisoned, and subsequently was released by taking the benefit of the insolvent law. He also gave in evidence by the constable, that at the time he took *Morrison* to prison he had a large roll of "turnpike money." Two or three turnpike certificates were given in evidence, one for $600, the other for $287 50, with an assignment indorsed thereon, dated 22d April, 1819, *Alexander Morrison* to *David Penrod;* these were produced by the defendant's counsel on a notice of the plaintiff. Some parol evidence of the declarations of *Penrod* and *Morrison,* at different times, was given, in order to make out the case.

As the trial progressed, the defendant objected to all the evidence which the plaintiff offered, which objections were overruled, and exceptions taken. It is not necessary to state the evidence more particularly, as the whole cause gave rise to these two questions:—

1st. Can the action be supported at all, on the evidence stated?
2d. Does the action survive to the personal representatives of the plaintiff?

A verdict and judgment were rendered in the Court below for $1,656 22, which the defendant removed here by writ of error, and the same questions were argued by

*A. W. Foster* for plaintiff in error.

Taking it for granted that the plaintiff's proof made out the case laid in the declaration, it amounted to this, that *Morrison* had assigned to *Penrod* the certificate which he had obtained from

(David Penrod *v.* Abraham Morrison.)

the turnpike company, without any consideration. There are several reasons why this will not support an action against *Penrod.* Those certificates were not the subject of a levy, nor could the plaintiff have obtained any advantage from *Morrison's* retaining them in his own hands, by the process which he issued upon his judgment. Nor does it appear that those certificates were of any value whatever, either to *Penrod* or *Morrison,* or that they would have been of any value to *Mitchell,* if he had obtained them by any means. No evidence was given that they had been paid to *Penrod,* or that the turnpike company was at all able to pay them. This evidence was essential to the plaintiff's case.

At common law, an executor or administrator represented nothing but the personal property and contracts of his testator or intestate. So it was until the statute of 4 *Edward* 3, *c.* 7. It was only by an *equitable* construction of that statute, that an action on the case survived, *because it was ex contractu.* It was construed to extend to an action against a sheriff for an escape; but this was because a previous statute gave an action of *debt* as the remedy. The cause of action in this case is not embraced within any of these reasons. It is purely an action for a conspiracy, an action of tort, in which the damages recoverable are not measured by any contract between the parties to it. It does not therefore survive to the personal representative. 1 *Saun.* 216, in note. *Sommer* v. *Wilt,* 4 *Serg. & Rawle,* 28. *Shoemaker* v. *Keely,* 2 *Dall.* 213. *Latimer* v. *Simmons,* 13 *Serg.* & *Rawle,* 183.

*Williams* for defendant in error.

The form of action which the plaintiff has adopted is the only one which he could sustain: and by the equitable construction of the *stat.* 4 *Edw.* 3, *c.* 7. *Robt. Dig.* 248, it survives to the personal representative. The case cited by the plaintiff in error in 1 *Saun.* is that of the death of the defendant; but the statute provides for the death of the plaintiff.

When the party doing the wrong receives a pecuniary benefit, the action will survive to the executors of the person injured, and this distinction is discoverable from the decisions upon the cases which do not survive. *Williams* v. *Cary,* 4 *Mod.* 403. 1 *Chit. Plead.* 56. *Hambly* v. *Trott, Cowper,* 374. *Rogers* v. *Simmons,* 13 *Serg. & Rawle.* 183. Every creditor has such a claim upon the property of his debtor, as will, under certain circumstances, authorize a pursuit of that property. Such as a fraudulent transfer of it to a relation.

That the action will lie. 1 *L. Raym.* 973, *quarto. ed. Kite* v. *Boyd,* 16 *Serg. & Rawle,* 300.

17

(David Penrod *v.* Abraham Morrison.)

The opinion of the Court was delivered by

ROGERS, J.—The plaintiff in error alleges, that no suit can be sustained, because *Mitchell* had not at the time of the transfer any specific lien on the property. This was an action on the case for a conspiracy, by which the plaintiff has been prevented from recovering his debt. *Morrison* being indebted to *Mitchell*, suit was commenced, which was in a course of prosecution to judgment and execution. Although *Mitchell* could not collect his debt, by *fi. fa.* and levy, as a chose in action is not the subject of execution; yet satisfaction might have been attained, by compelling *Morrison* to assign for the benefit of his creditors. There was at least a chance of satisfaction, of which he ought not to be deprived by any fraudulent combination with his debtors. The argument of the plaintiff in error would be the same, if *Mitchell* had, at the time of transfer, an execution in the hands of the sheriff; inasmuch as it would not have been a lien on a chose in action. It would be monstrous to say, that at the moment when he was about to attain the fruits of his judgment, the property of the defendant could be withdrawn in this manner; from the reach of his creditors. The absurdity, and injustice of the doctrine would be too glaring to admit of argument. No authority has been cited to sustain the distinction, and none such, I am sure, can be produced. It is unnecessary to throw temptations in the way of fraudulent debtors.

It was a principle of the common law, that if an injury was done to the person or property of another, for which *damages* only could be recovered in satisfaction, the action died with the person *to whom* or *by whom* the wrong was done. As this was calculated to do injustice, we find the rule gradually relaxed. For where the goods remained in specie, in the hands of the wrong doer, or his executors, it was decided, that replevin or detinue would lie, *for* or *against* the executor, to recover back the specific goods, *Sir William Jones*, 173, 174. And if the goods were consumed, it was ruled that an action for money had, and received, would lie to recover the value, *Cow.* 377. These decisions proceed on the principle, that here, there was not only an injury to the plaintiff, but a benefit to the wrong-doer, who either had the goods in specie, or had used them, or they had gone into the possession of his executors, and swelled the amount of assets. This was a departure from the ancient rule, the propriety and justice of which, cannot be questioned. These cases were decided at common law, independently of the statute of the 4 *Edward*, 3, *c.* 7, which has made further alteration in the rule, *actio personalis moritur cum persona*. The statute *de bonis asportatis*, which recites, that in times past, executors have not had actions

for a trespass done to their testators, as of the goods and chattels of the said testators, carried away in the life ; and so as such trespassers have remained unpunished, enacts, that the executor, in such cases, shall have an action against the trespassers; and recover their damages *in like manner* as they whose executors they be, should have had, if they were living.   This statute, which is further extended to executors of executors, by the 25 *Edward, 3, c.* 5, and to administrators, by the 31 *Edward, 3. c.* 11, is in full force in Pennsylvania.   These statutes being remedial, have always been construed liberally.   They have been extended to cases which, although not within the words, were thought to be within the mischief intended to be redressed.   In giving them a construction, the Courts have not looked to the form of action, but to the nature of the injury.   Whatever remedy the testator may have had, the same is given to the executors; whether it be trespass, trover, or case, is immaterial.   Substance, not form, has been regarded.   The statute says, they shall recover the damages *in like manner* as they whose executors they be.   Upon a careful review of all the authorities, it will be found, that the executors of a deceased plaintiff will have the same remedy as the testator himself, when the wrong has inured to the benefit of the defendant, or has increased the assets in the hands of his executors.   Whether the same rule will apply when the defendant dies, it is unnecessary to decide: although this, which must be admitted to be just and reasonable, would seem to have been the opinion of the Court, in *Keile* v. *Boyd,* 16 *Serg. & Rawle,* 300.   I speak, of course, of wrongs done to personal property; not to the person, or to the freehold of the testator.   And this, we conceive, was the evident intent of the statute, *de bonis asportatis.*   Thus an executor may have an action of trespass or trover, 5 *Rep.* 27, *Russel's* case.   *Sir William Jones,* 174.   An action for a false return, 4 *Mod.* 403, *Williams* v. *Carey.*   For an escape, 2 *Lord Raym.* 973, *Berwick* v. *Andrews.*   Debt on a judgment against executors suggesting a *devastavit,* 1 *Salk.* 314.   Action for removing goods taken in execution before the testator (the landlord) was paid a year's rent, 1 *Stra.* 212, *Polgrave* v. *Windham,* and other actions of a like kind, for injuries done to the personal estate of the testator in his life time.   In some of the cases cited, the remedy is given to the executor, merely because the personal property is made less beneficial to the executor, and this without regard to the form of action.   Much more then will he be entitled to relief, when the wrong has been, not only injurious to the plaintiff, but beneficial to the defendant.   It cannot be that the death of the plaintiff should enable the wrong-doer or his executors to enjoy the fruits of his injustice.   We have seen that the form of the action matters not; what then is the nature of the in-

(David Penrod *v.* Abraham Morrison.)

jury of which the plaintiff complains? The substance of the case is, that, by the fraudulent conduct of the defendant and his son-in-law, *Morrison,* the plaintiff has been prevented from recovering a just debt. This is doubtless an injury to the plaintiff, for which the law should provide some remedy. It moreover appears, that the debtor and his fraudulent transferee, have retained in their possession the turnpike orders, or checks, by which they are benefited, and the plaintiff injured to the amount of their value. It is not an injury to his person or freehold, but to personal property, and therefore within the equity of the statute. Most of the cases cited at the bar, were, when the defendant dies, which are not embraced by the statute, 4 *Edward* 3,

                                        Judgment affirmed,