BROWN *vs.* FEETER.

An *action on the case* lies against a party who *wrongfully* and *willingly* sues out an execution on a judgment which he *knows* to be paid and satisfied, whereby the property of the defendant is taken and sold; and to support the action it is not necessary to allege or prove *actual malice.*

Nor is it necessary to prove the precise day of the *levy* and *sale* under such execution, when laid under a *videlicit.*

Where a *count* in a declaration contains an admission of a fact bearing upon the right of action, and a *nolle prosequi* is entered as to such count on the trial, it is considered as stricken out of the declaration, except so far as it is referred to in other counts.

A *party to the record,* generally is responsible for whatever is done in his name; thus the *assignor* of a judgment is liable, if execution be issued upon the judgment after the same is satisfied.

Where a party agrees to accept a *specific article* of property in payment of a judgment, and it is delivered and accepted, such acceptance is an *appropriation* in satisfaction, in judgment of law.

The fact of a party's receiving the *surplus* of the avails of his property sold under an execution *illegally issued,* does not deprive him of his right of action, for the unlawful suing out of the process.

Thɪs was an action *on the case,* tried at the Montgomery circuit, before the Hon. Esek Cowen, one of the circuit judges.

The declaration contained five counts: The *first* charged the defendant with wrongfully and unjustly issuing a *fi. fa.* on a judgment rendered in his favor against the plaintiff, which had been fully paid and satisfied, directing the levy of $29,48, with interest from 17th February, 1820, as due thereon, causing certain goods and chattels of the plaintiff to be seized by virtue thereof, and procuring the same, to wit, two roan geldings, &c. to be sold under color and pretence of such writ. The execution was stated to have been issued on the 18th February, 1828, and the sale to have taken place on the 1st April thereafter. The *second* count was substantially like the first. The *third* count was also like the first, with the additional facts that the judgment on which the execution issued was obtained on the 10th August, 1819, and that the execution was sued out without a previous revival of a judgment by *scire facias* or otherwise. The *fourth* count was also like

NEW-YORK, May, 1831.

Brown.
v.
Feeter.

the first, except that it admitted that at the time of the issuing of the execution there was due upon the judgment the sum of $10; and the *fifth* count was the common count in trover. The defendant *demurred* to the third count, and pleaded the general issue to the other counts in the declaration. On the trial of the cause, the plaintiff produced the judgment on which the execution had been issued, and a statement in the hand writing of the defendant, shewing the balance due on the 21st February, 1820, to be $29,48; he also proved an agreement of the defendant in the spring of 1820, to accept lumber in payment of such balance, and the delivery of lumber in the months of June and July of that year, to an amount sufficient to satisfy the balance; and also proved the acknowledgment of the defendant, that he had received lumber to an amount sufficient to satisfy the judgment. A deputy sheriff of Montgomery testified that on the 21st February, 1828, he received an execution in favor of the defendant, against the plaintiff, tested 18th February, which purported to be issued by the defendant in person, on which he was directed to levy $29,48, with interest from the 17th February, 1820, and by virtue of which he sold on the 7th July, 1828, a horse and colt belonging to the plaintiff, for $64. The amount directed to be levied he paid to one *Jacob Hees*, and the surplus, about $14, was paid over to the plaintiff in this cause. Hees testified that the judgment in favor of the defendant against the plaintiff was assigned to him by the defendant on the 11th February, 1828, and that in June 1828, the defendant wrote him, informing him that the supreme court had denied the motion to set aside the execution, and directing him to have the same collected without delay. The value of the horses sold was proved to be 120 or 125 dollars. On this evidence the plaintiff rested.

The defendant moved for a nonsuit, on the grounds, 1st. That the plaintiff had failed to prove a *levy* and *sale* on the days laid in the declaration; 2d. That it being admitted by one count in the declaration that there was a balance due on the judgment, the action could not be maintained merely because the execution had been issued for more than was due; and 3d. That the action, if maintainable, ought to have been

brought against Hees, the assignee of the judgment, and not against the defendant. The counsel for the plaintiff abandoned the third and fourth counts, and entered a *nolle prosequi* as to each, and the judge refused the motion for a nonsuit;' to which decision the defendant excepted. The defendant then requested the judge to charge the jury that the plaintiff was not entitled to recover upon the grounds before relied on in support of the motion for a nonsuit; who refused so to charge, and decided that the days of *levy* and *sale* were not material, and need not be proved as laid in the declaration; that the count admitting a balance due on the judgment having been abandoned, the admission contained in it was not evidence of the fact, and ought not to affect the decision of the cause, and that notwithstanding the assignment of the judgment, the action was properly brought against the defendant, and directed the jury to find a verdict for the plaintiff. The defendant excepted to the charge, and the jury found a verdict for the plaintiff with $114 damages. It was stipulated between the parties that the defendant might make a case, with leave to either party to turn the same into a special verdict or bill of exceptions. The defendant moved to set aside the verdict.

*D. Burwell,* for defendant. *Case* will not lie unless *actual malice* is alleged and proved. Although the plaintiff in the judgment had agreed to receive lumber in payment, actually received it, and agreed to appropriate it in satisfaction, still, not having done so, he is protected by the judgment. The remedy of the defendant in the judgment was by action of *assumpsit* to recover damages for breach of the agreement, or by *audita querela,* and not by an action on the case. Cro. Jac. 505. 1 Bos. & Pull. 388. 2 id. 129. 3 Esp. R. 34. 1 Campb. 295. The counsel also insisted that the days laid in the declaration were material, and ought to have been proved as laid; that the verdict was for too large an amount; that the plaintiff by receiving the *surplus* of the sheriff had adopted the sale as legal, and waived the *tort ;* and that the judgment having been assigned, the assignee had a legal right to collect the balance by execution, leaving the

NEW-YORK,
May, 1831.

Brown
v.
Feeter.

plaintiff in this suit to seek his remedy against the defendant by action for breach of his agreement.

*A. Loomis,* for plaintiff. The action is properly brought in *case;* if *trespass* would lie, *case* also will lie, and is the preferable action. 6 Cowen, 345. 11 Mass. R. 500. 19 Johns. R. 378. 3 T. R. 183. 1 Chitty's Pl. 128. At all events, the plaintiff was entitled to recover on his count in *trover.* 1 Comyn's Dig. 249.

*By the Court,* SUTHERLAND, J. The decisions of the circuit judge, upon all the points raised by the defendant upon the trial, appear to me to have been correct.

The precise day of the levy and sale was in no respect material. The execution proved by the deputy sheriff corresponded with that described in the declaration as to the teste, the return, the amount of the judgment, and the sum directed to be levied; and he also proved that the sale of the plaintiff's property, of which he complains, was made by virtue of that execution. It is not perceived how the precise day on which the sale took place could in any manner become material; and being laid under a *videlicit* if it was not material, the plaintiff was not bound to prove it as laid. It is impossible that the defendant could have been misled by the variance, or that his defence was in any respect affected by it; it was a collateral fact altogether, and not constituting in any sense the gist or substance of the plaintiff's cause of action. The sale might have been material, but the precise time when, certainly could not have been under the circumstances of this case.

The *fourth* count having been expressly abandoned by the plaintiff, none of its averments or admissions could be used as evidence against him. As a general rule, each count is considered as containing a distinct and independent cause of action; and if one of several counts is decided to be bad upon demurrer, or is voluntarily abandoned, and a *nolle prosequi is* entered upon it, it is to be considered as struck out of the declaration, except so far as it is referred to by the other counts for a particular date or fact, and in that manner and to that

extent becomes material, and is considered as incorporated in them. Such was not the fact in this case.

Although the defendant had assigned the judgment before the execution in question was issued, he was responsible for what was done under it. He was not merely a *nominal party* to the record ; the execution purported to have been issued by him in *proper person*, and the presumption is, was in fact so issued, and in June, 1828, four months after the execution was issued, the defendant wrote to Hees, his assignee, that a motion which had been made to set aside the execution, had been denied, *and directing him to have the same collected without delay*—he directed and controlled the whole operation, and was probably the party beneficially interested in the result either directly or indirectly. There are very few exceptions to the rule that the party on the record is responsible for whatever is done in his name, although some other person may be beneficially interested in the subject matter, and may also be liable on that ground. This disposes of all the points which were specially raised upon the trial, and it may be questionable whether the defendant is now at liberty to raise any other. He expressly excepted to the various decisions of the judge, and to his charge to the jury ; and although a case was finally made by a stipulation between the parties, ( instead of a bill of exceptions) with leave to either party to turn it into a special verdict or bill of exceptions, it is not probable that the plaintiff's counsel intended by that stipulation to give to his adversary any greater privileges than he would have had under a regular bill of exceptions. I am, however, inclined to think that we must consider it as a case made in the *ordinary way*, and give to the defendant the same latitude and range of objection which he would be entitled to in ordinary cases. 4 Wendell, 471.

He contends, then, that an action *on the case* will not lie for an injury of this description, unless *actual malice* is alleged and proved. The declaration in this case, it will be recollected, alleges that the judgment against the plaintiff had been paid, contented and satisfied by the said plaintiff to the said defend-

ant, (before the committing of the grievances complained of)
and that there was no sum of money due or payable upon said
judgment, &c. ; yet the said defendant *well knowing the premi-
ses, but contriving, and wrongfully and unjustly intending* to in-
jure and aggrieve the said plaintiff in that behalf, *wrongfully
and unjustly* caused or procured the execution to be issued, &c.
The jury have found these allegations to be true : that the
judgment was paid and satisfied, and that the defendant with
the full knowledge of that fact, and with the intent to injure
the plaintiff, issued the execution.

The evidence satisfactorily shows that the judgment was
paid to Feeter himself, and that he acknowledged it was paid.
He expressly agreed to take lumber for the balance due on
the judgment ; it was delivered to him, and on being inquir-
ed of by the agent of the plaintiff if it was sufficient to sat-
isfy the judgment, he replied that it was sufficient, and the
case states that the proof as to the value of the lumber show-
ed also that it was sufficient. The counsel for the defendant
indulges in a criticism upon this part of the case, and says that
this does not show *payment of the judgment,* but merely an
agreement on the part of Feeter to apply the lumber in pay-
ment, and that the action should have been *assumpsit* for the
breach of this agreement, instead of case for the issuing of the
execution. The lumber having been delivered by the plain-
tiff and accepted by the defendant expressly on account of this
judgment was *appropriated to it in judgment of law,* without
any other act of the parties. What other act could have been
done ? If a receipt had been given, acknowledging that the
lumber had been accepted in satisfaction of the judgment, it
would only have been another item or species of evidence of
the same fact ; and a payment or appropriation of money may
be as satisfactorily shown by the acts or admissions of parties
as by a receipt.

If the defendant, with a full knowledge that this judgment
was paid and satisfied, caused an execution to be sued out up-
on it, whereby the plaintiff's property was sold and sacrificed
I apprehend he is responsible in this form of action for the inju-
ry. The cases cited and relied upon by the defendant's counsel

are all distinguishable from this, and were decided upon prin-
ciples which have no application here. *Bennus* v. *Guyldley*,
Cro. Jac. 505, was an action upon the case, in which the
plaintiff declared that whereas the defendant recovered against
him £7 10. for costs and damages, and upon that judgment
the plaintiff paid him £7, and the defendant released to him
the judgment, and by his deed covenanted that he would
withdraw all process of execution for the debt; that the de-
fendant intending to vex him against his release, and against
his promise in said writing, sued out an execution against
him, on which he was arrested and imprisoned. To this dec-
laration it was objected, among other things, that there being
an express covenant under seal, on the part of the defendant,
to withdraw or not to issue an execution, the plaintiff's remedy
was upon that covenant, and that assumpsit would not lie;
and of that opinion was the whole court. This simply decides
that covenant, and not assumpsit, must be brought, where the
undertaking or promise is by deed. In that case, too, the
judgment was not satisfied, except by the operation of the re-
lease and covenant, as only £7 were paid, when the judg-
ment was for £7 10.; it bears no analogy in any respect to
this case. In *Scheibel* v. *Fairbrain and another*, 1 Bos. & Pull.
388, it was held that an action on the case would not lie
against the defendants for neglecting to countermand an exe-
cution which they had issued against the plaintiff for a debt
due to them, and which debt the plaintiff paid to the defend-
ants after the writ was issued. The action was founded up-
on the assumption that it was the duty of the defendants im-
mediately upon receiving the debt to have countermanded the
writ. The court held that there was no such duty imposed
upon the defendants; that they were not bound to have ac-
cepted the tender, and that it was the plaintiff's business to
have seen that the execution of the writ was stopped; that it
was an action for a mere non-feasance, where there was no
duty imposed upon the party to do any thing, and that such
an action could not be sustained.

*Gibson* v. *Chaters*, 2 Bos. & Pull. 129, was an action on the
case for maliciously, and without any probable cause, arrest-

NEW-YORK, ing the plaintiff, and holding him to bail.   Lord Eldon, Ch. J.
May, 1831.  before whom the cause was tried, nonsuited the plaintiff, on
Brown      the ground that all the circumstances of the case showed that
v.         the defendant acted in good faith, and without any malice.
Feeter.    The debt was paid by the plaintiff to the defendant's agent
without his knowledge, after the affidavit to hold to bail had
been made.   The gist of such an action is the malice and
want of probable cause; but that was a clear case of perfect
good faith on the part of the defendant, and of probable cause,
according to his knowledge of the facts, for the arrest.  *Jack-
son* v. *Burleigh*, 3 Esp. R. 34, establishes the same principle,
that an action for maliciously arresting a party, and holding
him to bail, cannot be sustained if the party acted in good
faith, honestly, though erroneously believing more than £10
to be due, and under that impression causing him to be held
to bail.   Lord Kenyon held that an honest belief under such
circumstance was probable cause, and that the action could not
be sustained, and accordingly nonsuited the plaintiff.   Vide
also 1 Campb. 295.   Actions for malicious prosecutions depend
upon principles peculiar in some respects to themselves; the
plaintiff is bound to establish the want of probable cause, in
violation of the general rule, that no party shall be called up-
on to prove a negative.   4 Wendell, 424, and cases there re-
ferred to.

The case of *Agry* v. *Young*, 11 Mass. R. 220, merely goes
to the distinction between *trespass* and *trespass on the case*, and
has no application here.   The case of *Vail* v. *Lewis & Living-
ston*, 4 Johns. R. 450, is entirely compatible with the princi-
ple of this action.

I find no authority for saying that in a case like this, express
malice must be alleged in terms and explicitly proved.   If the
declaration charges the act to have been wrongfully and wil-
fully done, and the evidence supports the allegation, it is suf-
ficient.

The receipt by the plaintiff of the surplus produced by the
sale, over and above the amount directed to be levied on the
execution, was not an admission of the legality of the sale, so
as to conclude him from subsequently questioning it; what-
ever he did receive was a proper subject of consideration for

the jury in determining the loss or damage that he had sustained.

We cannot interfere with the verdict on the ground that the damages are excessive.

NEW-YORK,<br>May, 1831.

Motion for new trial denied.