DAVID BUSH *v.* JAMES COLE and JACOB COLE.

Where auctioneers, who were not authorized to sell a house and lot for less than $2800, struck the same off to the plaintiff for $2250; *Held*, that the contract was not binding upon the owner, but that the auctioneers were personally bound by it.

Where auctioneers sell real estate, and sign the contract as agents of an undisclosed principal, if they do so without authority, they are primarily responsible as contracting parties, and are liable to refund to the purchaser the amount of his deposit and auctioneer's fees with interest.

And if it appears that the auctioneers knew they were not authorized to sell the premises for less than $2800, when they struck them off to the plaintiff at $2250, he will also be entitled to recover what the premises were worth over and above the price he was to pay therefor.

THIS action was brought in the Supreme Court to recover damages, for the reason that the plaintiff failed to obtain a title to a house and lot in the city of Brooklyn, which the defendants, as auctioneers, sold to him at public auction. The terms of sale which the defendants read, before offering to sell the premises, were as follows, viz: "Ten per cent of the purchase money to be paid down, and one thousand eight hundred dollars of the remainder to remain on bond and mortgage upon the premises, if required by the purchaser." The plaintiff bid $2225, for the house and lot, and the same were struck off to him by the defendants at that price. The plaintiff then paid ten per cent of the purchase price, to wit, $222.50, to the defendants, and received from them a writing, as follows, viz: "Receipt for deposit. No. 4134. For $222-50/100. Brooklyn, February 20th, 1854. Received from Mr. David Bush two hundred and twenty-two 50-100 dollars, being ten per cent deposit, according to the conditions, upon his lot known as No. 170 Prospect street, Brooklyn, sold this day at auction for $2225; for which a good and sufficient title is to be given, through Henry T. Taber of Brooklyn. This deposit will under no circumstances be paid to either buyer or seller without their mutual consent, and in no case

without the production of this receipt. Balance payable on the 30th day of April, 1854, at the office of the auctioneer, 43 Fulton street, Brooklyn. (Signed,)

JAMES COLE & SON, Auctioneers."

The owner of the premises was John Inyard of New Jersey. He refused to convey the same, on the ground that he had not authorized the defendants to sell them; that he had only verbally authorized Taber to sell the same for $2800; and not for a less sum.

The plaintiff offered to pay for the premises, and take a deed of the same, to the defendants and Taber. The defendants informed the plaintiff that no deed would be given; and they tendered back to the plaintiff the ten per cent of the purchase price he paid them, to wit, $222.50, and also the $10 auctioneers' fees, which the plaintiff paid to the defendants on the sale. But the plaintiff refused to receive the same.

The action was tried at the Kings circuit in January, 1858, when, besides the foregoing facts, the following were established: The plaintiff called Taber, who testified that he authorized the defendants to sell, but limited them to the price of $2800, and did not authorize them to sell the premises for less than that sum. The defendants testified that they were not limited by Taber as to the price; that he never gave them the name of the owner of the premises; that he attended the sale and bid $2200 therefor; that the defendant, who cried the premises, after some time, turned to Taber, and said: "Have you done, sir?" but he paid no attention to the remark, and the premises were soon struck off to the plaintiff, for $2250. Taber did not notify the defendants, that day, that no deed would be given, or that the sale would be repudiated.

A witness for the plaintiff was asked this question: "What were the premises, No. 170 Prospect street, worth in May, 1854?" The defendants' counsel objected to the same. The judge overruled the objection and the defendants' coun-

sel excepted. The witness answered "$2700 or $2800." The plaintiff made searches and ascertained who owned the premises before he offered to perform the contract of sale on his part; but he did not prove what the expense of his searches was.

The only damages proved, unless the difference between the value of the premises shown by the plaintiff and the price he was to pay therefor was damages, were the $222.50 per centage on the purchase price, which the plaintiff paid down, and the $10 auctioneers' fees he paid.

The defendants acted in good faith in making the sale, unless they were limited by Taber, in selling the premises, to $2800.

The defendants' counsel moved for a nonsuit, on the ground that there was no evidence that Inyard was known to the defendants to be the owner of the premises, or, that the fact was made known to them; while by the complaint it appeared that the defendants made the sale under authority from, and by the directions of Taber; and that it nowhere appeared by the testimony that the defendants had exceeded their authority in making the sale. The judge refused to nonsuit the plaintiff, and the defendants' counsel excepted.

The judge charged the jury, among other things, as follows: "That if an auctioneer is instructed not to sell property under a specified sum, and sells it for less, and the owner refuses to convey it on that account, the auctioneer is responsible to the purchaser *for the consequent damages.* That if there is any thing improper in the limitation, the auctioneer should not act at all. But there was not; as although he could not legally bid himself, or employ other bidders, or as they are usually called, puffers, he might state that he was not authorized to receive any bid for less than the specified amount. That if one acting professedly as owner or without stating any thing to the contrary, should employ an auctioneer to sell property not really his own, it would be a harsh rule, and one not called for by the law, to make the

auctioneer responsible to the purchaser because he had not followed the unknown instructions of the unknown owner. [But if the defendants in this case knew that Taber was agent for the owner, they assumed the risk of his not exceeding his instructions and were liable in damages to the plaintiff."] The defendants' counsel excepted to the above portion of the charge within brackets. The judge stated to the jury, that in order to raise the question involved in it, he should instruct them to find specifically whether the owner made a limit for the price of the property, and whether, if he did, the limitation was made known to the defendants. The judge further said, that if an owner employing an auctioneer to sell his property for not less than a specified sum, should be present at the sale, and should leave the auctioneer to strike it off for a less amount, he might be deemed to acquiesce in the sale, and the auctioneer would not be responsible if such owner should afterwards refuse to make the requisite conveyance. But in this case the owner was not present, and there was not sufficient in the circumstances to warrant a departure from any instructions given to the auctioneer in behalf of such owner.

The defendants' counsel asked the judge to charge the jury that if they should find that Taber had authority to employ an auctioneer to sell, the plaintiff could not recover. That the limitation was not binding on the auctioneers. That when the agent was present, it was the agent's business to bid up to the limit, and if he had been faithless, his neglect should not be visited upon the auctioneers, as a matter of law, nor are they obliged to puff the property. The judge refused to charge otherwise than he had done, upon the matter requested, and the defendants' counsel excepted.

The jury rendered the following verdict, viz: "We find in answer to the question, did the owner make a limit for the price of the property, and was the limitation known to the auctioneers? Yes; and they do further say, we find for the plaintiff four hundred and eighty-three 83-100 dollars.

This includes deposit money and auctioneers' fees and interest."

The case did not show what any portion of the charge was, except that above set forth.

The defendants' counsel made a motion for a new trial, at a special term of the Supreme Court, on a case containing the exceptions, which motion was denied. A judgment was rendered on the verdict, in favor of the plaintiff, with costs. The defendants appealed from the judgment and from the order denying their motion for a new trial to the general term of the Supreme Court in the second district, where the same were affirmed. The defendants then appealed to this court.

*Jas. L. Campbell,* for the appellants.

I. The nonsuit was erroneously denied. The complaint is bad, and not only does not state a cause of action, but actually shows that the plaintiff had no cause of action against the defendants in respect to the matters therein stated. 1. The receipt (if sufficient as a memorandum of a contract for the sale of real estate) was binding upon Taber as vendor. Both parties allege and prove it to have been made under his authority. He was "the party to be charged" with the performance of the agreement. It can not be varied by parol, so as to introduce a principal other than that designated in it.

II. The evidence of the value of the property was improperly admitted. A person who professes to contract on behalf of another without authority in fact, is liable only for the damage resulting from the credit given to such false representation until discovered to be untrue. He is not liable for any profit or advantage which would have accrued from a performance. The defendants did not prevent the conveyance. Had they made no representation the property could not have been obtained on the terms offered, and their representation could not hinder that which otherwise would not

have occurred. (*Jefts* v. *York,* 4 Cush. 371; *Hopkins* v. *Mehaffy,* 11 Serg. & Rawle, 126; *Lewis* v. *Nicholson,* 12 E. L. & E. 430; *Thompson* v. *Davenport,* 2 Smith's Lead. Cas. 301; *Smout,* v. *Ilbery,* 10 M. & Wels. 1; *Randall* v. *Trimen,* 37 E. L. & E. 275; *Collen* v. *Wright,* 40 id. 182; *White, rec'r,* v. *Madison,* Ct. of Appeals, June, 1863.) If damages in such cases were to be regulated by the result of an inquiry into the profit or loss consequent upon performance, the most inequitable results might frequently follow. The language which has been somewhat loosely used in some cases, (such as *Meech* v. *Smith,* 7 Wend. 315; *Palmer* v. *Stephens,* 1 Denio, 471,) "that a party who has contracted as agent without authority is liable as principal," is applicable merely to the form of action at common law, was not intended, and can not be supported, as a rule of damages. There are many cases, however, in which its application would produce the same result as that of the proper rule. It was not necessary to raise the question a second time on the charge of the judge.

III. The part of the charge excepted to was erroneous. It confounded in the minds of the jury two very different things—instructions and authority. Applying the proper distinction between them to the evidence in this case, it will appear that, even if there was a violation of instructions, the authority was not exceeded. If instructions only were violated, the purchaser could not complain; such violation not excusing the party who gave them from liability. The consideration to be obtained was mere matter of instruction— the authority to sell indisputable. (*Mech's Bank* v. *New Haven R. R. Co.,* 3 Kern. 599.

*John H. Reynolds,* for the respondent.

I. By the verdict of the jury, the fact is established, that the owner of the property in question made a limit as to the

price for which the property might be sold, and this limita-
tion was known to the auctioneers at the time they made the
sale, and in express violation of their instructions they sold
it to the plaintiff for a less amount than they were authorized
to do.    Upon this state of facts—the owner refusing to con-
vey because the auctioneers had violated instructions—there
can be no doubt of the liability of the defendants to all the
damages the plaintiff has sustained.    The jury were so
instructed, and no exception was taken.

II. It is to be presumed that the jury were correctly
instructed as to the rule of damages, as no question in that
respect is made by the defendants.    1. It is obvious from the
amount of the verdict, that the jury gave only the actual
damage the plaintiff had sustained, and not the difference
between the price agreed to be paid and the actual value of
the property.    2. Upon the facts established by the jury, it
may be urged that the defendants sold without authority,
and in bad faith ; and in such case the recovery may be
equal to what the plaintiff has lost by the defendants' non-
performance.    (*Brinckerhoff* v. *Phelps*, 24 Barb. 100 ; *Con-
ger* v. *Weaver*, 20 N. Y. R. 140 ; *Hopkins* v. *Grazebook*,
6 Barn. & Cress. 31 ; *Trull* v. *Granger*, 4 Seld. 115.)

III. On the trial of the cause the court allowed the plain-
tiff to give evidence of the value of the property at the time
the defendants should have conveyed it, and the defendants
excepted.    1. When, in a case like the present, bad faith can
be imputed to a party who refuses to convey real estate
according to agreement, the plaintiff is entitled to recover,
as damages, the difference between the price agreed to be
paid and the actual value, and hence the evidence was entirely
proper.    (See cases above cited.)    2. And upon the facts
established by the verdict it is impossible for the defendants
to escape the imputation of bad faith, for they made the sale
in willful violation of instructions and hence without au-
thority, and after the sale, reduced the contract to writing,

received a deposit of money and auctioneers' fees, and gave the plaintiff to understand that he was to have the property.

IV. The motion for nonsuit was properly denied. 1. There was nothing in the ground suggested, at the time the motion was made, and if there was it is of no consequence, because subsequently it was distinctly proved, and so the jury found, that the defendants did exceed their authority. 2. Besides, the defendants were liable upon the agreement signed by them at the sale. It was their contract, and they agreed to give a title, and they did not disclose the fact that they were acting for a principal, or disclose his name. (Story's Agency, §§ 155, 264, 266, 267, 276, ed. of 1851; *Mills* v. *Hunt*, 20 Wend. 433; *Coon* v. *Knap*, 4 Seld. 402.)

V. The single exception to the judge's charge is untenable. 1. The portion of the charge excepted to was to the effect, that if the defendants knew that Taber was agent for the owner, they assumed the risk of his not exceeding instructions, and were liable. 2. This instruction was of no sort of consequence, inasmuch as the jury found that the defendants violated the instructions they had received from the agent, and hence the exception is practically made to a mere abstraction and must fail. 3. But if the proposition has any material relation to the case, it is unquestionably sound, and for that reason also the exception must fail. 4. The judge correctly refused to charge as requested by the defendants. Each of the several requests had no foundation in law or fact. But as the exception is general to all, if any one should not have been charged, the exception to the whole goes down.

BALCOM, J. Whether the verdict of the jury was against evidence is not within the province of this court to determine. We must, therefore, assume the truth of the case to be as the jury have found, namely, that the defendants were not authorized to sell the house and lot for less than $2800. This being the case, their alleged contract, as auctioneers, to

sell the same to the plaintiff for $2250, was not binding upon the owner.  The defendants were constituted agents for a particular purpose, and under a limited and circumscribed power, and could not bind their principal beyond their authority.  (See *Batty* v. *Carswell,* 2 John. 48 ; *Andrews* v. *Kneeland,* 6 Cowen, 354; *Gibson* v. *Colt,* 7 John. 390 ; *Nixon* v. *Palmer,* 4 Seld. 398; Hoff. Ch. 351; Story's Ag. §§ 17 to 23, 126, 131, 224.)

If the owner of the premises had authorized the defendants to sell the same at auction, without any limitation as to the price, the contract of sale which the defendants executed would have bound him.  It would have answered the requirements of the statute of frauds ; and according to the uniform course of decisions in this state, the defendants are personally bound by the contract.  It does not show who the owner of the premises was.  But if it did, the defendants would be personally liable upon it, because the owner did not authorize them to make such a contract in his name or for him. ·(See *White* v. *Skinner,* 13 John. 307 ; 7 Wend. 305 ; 1 Hill, 402 ; *Coleman* v. *Garrigues,* 18 Barb. 60.)  It was not so framed and executed that neither the defendants nor their alleged principal could be bound by it, as the agreement was in *Sherman* v. *The N. Y. Cent. R. R. Co.,* (22 Barb. 239.)  It shows that the defendants signed it as agents of an undisclosed principal ; and as they did so without authority, they were primarily responsible as contracting parties.  (*Episcopal Ch. of St. Peter* v. *Varian,* 28 Barb. 644; *Mills* v. *Hunt,* 20 Wend. 431.)

If these views are correct, there can be no doubt that the defendants were liable to refund to the plaintiff the $222.50 per centage on his bid, and the $10 auctioneers' fees which they received of him when the contract of sale was made, with interest on the same.  And if we are to assume that the verdict of the jury establishes that the defendants knew they were not authorized to sell the premises for less than $2800, when they struck them off to the plaintiff for $2250,

he was also entitled to recover what the premises were worth over and above the price he was to pay therefor; for this proposition is clearly sustained by the decisions in *Trull* v. *Granger*, (4 Seld. 115;) *Driggs* v. *Dwight*, (17 Wend. 71,) and *Brinckerhoof* v. *Phelps*, (24 Barb. 100;) and neither of these decisions was overruled by this court in *Conger* v. *Weaver*, (20 N. Y. Rep. 140.) The rule seems to be that if the vendor acts in good faith, and as a prudent man should, the vendee can recover nothing for the loss of a good bargain. (*Peters* v. *McKeon*, 4 Denio, 546.) But if he contracts to sell lands to which he has no color of title; or perversely refuses to perform his contract, when there is no obstacle in the way; or makes an agreement to sell as agent without authority from the owner, he is liable for damages beyond the part of the consideration paid and interest. (See *Baldwin* v. *Munn*, 2 Wend. 399; 2 Hill, 116; Id. 488, and authorities *supra.*)

We must assume that the verdict of the jury shows the defendants did not act in good faith; because the jury found specifically that the owner limited the price for which the premises might be sold, and that such limitation was made known to the defendants—which price was greater than that for which they struck off the premises to the plaintiff.

The motion for a nonsuit was properly denied, for two reasons: 1. The plaintiff was clearly entitled to recover the percentage and auctioneers' fees which he paid to the defendants, and interest thereon; 2. The evidence raised the question whether the defendants did not act in bad faith, in agreeing to sell the premises for less than the price limited therefor by the owner.

The evidence that the premises were worth more than the price the plaintiff was to pay therefor was competent, if in any view of the case the plaintiff could recover for the loss of a good bargain. And as there was sufficient evidence to justify the judge in submitting the question to the jury, whether the defendants did not act in bad faith in selling

the premises to the plaintiff for a less sum than they were authorized to take therefor, the evidence, that the premises were worth more than the contract price, was admissible.

The charge on the question of damages is not in the case, and the presumption is it was correct.

My conclusion is, that no error was committed on the trial, unless the verdict was against evidence. But whether it was is not for us to determine. The decision of the Supreme Court that it was not against evidence is conclusive upon the defendants.

It follows that the judgment of the Supreme Court should be affirmed, with costs.

DENIO, Ch. J. also delivered an opinion for affirmance; and all the Judges concurring,

Judgment affirmed.