(43 Misc. Rep. 108.)

PETRY v. CHARLES H. CHILDS & CO.

(Supreme Court, Trial Term, Columbia County.   March, 1904.)

1. ABUSE OF PROCESS—MALICE—INTENT.
    While it may not be necessary to prove malice as against the plaintiff
    in an action for an abuse of process, there must be shown an intent to do
    something wrong, or to make a willful misuse of. the court or its process
    for the purpose of improperly accomplishing some ulterior or collateral
    purpose which could not be obtained by a direct method.

    Action by William Petry against Charles H. Childs & Co.   The
complaint was dismissed, and plaintiff moved for a new trial.   Mo-
tion denied.

    This is an action to recover damages for an alleged abuse of process, grow-
ing out of the following facts:   On September 21, 1903, the defendant in this
action, Charles H. Childs & Co., a corporation doing business at Utica, N. Y.,
instituted an action against the plaintiff herein by the service of a summons
and complaint in this court, in which complaint judgment was demanded for
$98.32, with interest from July 1, 1903, and with costs of the action.   On the
same day, but after the service of the summons, Petry mailed to Childs &
Co., at Utica, N. Y., a check for $98.32, which was the amount demanded of
him in said action, exclusive of interest and costs.   September 23, 1903, Childs
& Co. procured such check to be certified by the bank on which it was drawn.
On September 25, 1903, the attorneys of Childs & Co. wrote to Petry, acknowl-
edging the receipt of the check, and informing him that the costs of the action,
amounting to $16, must be paid before the action would be discontinued, and
which letter also contained the following statement:   "Upon receipt of the
costs, the amount of your check will be included and the whole will be em-
ployed in satisfaction of the claim."   To this letter Petry made no reply.
Shortly thereafter Childs & Co. presented the said check to the bank for pay-
ment, and the same was paid.   On October 13, 1903, the attorneys of Childs
& Co. again wrote Petry, saying they had not received the remittance of $16
costs, and continuing as follows:   "Unless this amount is forwarded us by
return mail, we shall be compelled to enter up judgment against you for the
full amount, crediting the amount you have already paid upon the judgment,
and the expenses will also be somewhat increased.   We trust you will not
make it necessary for us to resort to this measure."   To this letter Petry on
October 17, 1903, sent an answer to Childs & Co., in which he stated that he
had sent a check "in full," and protesting against the payment of the costs,
and saying, among other things:   "If you go on with this thing it must cost
us both something, and I must protect myself."   On October 21, 1903, the at-
torneys for Childs & Co. again wrote to Petry in answer to his letter of Oc-
tober 17th, still insisting on the costs, and concluding as follows:   "We give
you one more opportunity to send us your remittance.   If not, we shall be
compelled to take judgment."   No other communication passed between the
parties, and on October 29, 1903, eight days after the date of the last letter
to Petry, Childs & Co. entered judgment against him for $117.66, and issued
an execution on which was credited the amount of the check previously re-
ceived.   For. the amount remaining unpaid on this execution, the sheriff made
a levy on the property of Petry.

    On the 14th of November, 1903, at a Special Term held in Syracuse, N. Y.,
an order was made in the former action by Mr. Justice Andrews, on motion
of Petry, opening his default, and directing that the said judgment against
him be vacated on payment by him within 10 days of the costs included in such
judgment, besides $10 costs of such motion, and on the further condition that
within said 10 days he should deliver to Childs & Co. a stipulation permitting
Childs & Co. to discontinue the action, without costs.   Petry paid the amounts
required by the terms of said last-mentioned order, and gave the stipulation
therein required, and such action was accordingly thereupon discontinued.

John L. Crandell, for plaintiff.
Grant & Wager, for defendant.

COCHRANE, J.   The undisputed facts disclosed in this case do not establish plaintiff's right to recover.   Although this is not an action for a malicious prosecution, but for an abuse of process, nevertheless in all actions of this character to which my attention has been called there has existed the element of intentional wrongdoing, or a wanton attempt to pervert the processes of the law from their proper use and design.   While it may not be necessary to prove malice as against the plaintiff, there must be the intent to do something wrong, or to make a willful misuse of the court or its process for the purpose of improperly accomplishing some ulterior or collateral purpose which could not be obtained by direct and straightforward methods.   In some of the authorities the action is referred to as one for "malicious abuse of process."

In Brown v. Feeter, 7 Wend. 301, it was said:

"If the declaration charges the act to have been wrongfully and willfully done, and the evidence supports the allegation, it is sufficient."

It was found as a fact in that case that a judgment on which an execution had been unlawfully issued "was paid and satisfied, and that the defendant, with a full knowledge of that fact, and with the intent to injure the plaintiff, issued the execution."   A similar state of facts existed in the case of Barnett v. Reed, 51 Pa. 191, 88 Am. Dec. 574.

So in Dishaw v. Wadleigh, 15 App. Div. 205, 44 N. Y. Supp. 207, it was said:

"It was sought by trickery and cunning to pervert the processes of the law from their proper use and design, in order to reach a result which it was thought could not be arrived at by the ordinary and legitimate procedure of the courts."

In Hazard v. Harding, 63 How. Prac. 326, the complaint alleged an unlawful and malicious contrivance, purpose, and intent to injure, harass, and distress the plaintiff, and to compel him, through fear and duress of imprisonment, to pay an unlawful and fictitious debt; and this allegation, on demurrer, was held to be good.

In Paul v. Fargo, 84 App. Div. 14, 82 N. Y. Supp. 369, the distinction between an action of this kind and one of malicious prosecution is pointed out, and cases for an abuse of process were referred to.   It was there said by the court, referring to an action such as this:

"Proof of malice is not important, except as it may tend to aggravate damages.   It is enough that the process was willfully abused to accomplish some unlawful purpose."

The facts in this case do not permit an inference of any unlawful purpose or intentional wrongdoing on the part of this defendant.   A controversy existed between the parties as to a portion of the claim which was within the demand of the complaint in the former action. Childs & Co. contended that there was a balance of $16 due in the former action.   Petry was fairly apprised of this claim against him, not only by the complaint in that action, but specifically by the letter

of September 25th, written to and received by him after he had sent his check. For 15 days after the receipt of that letter he might have interposed an answer, which, if his theory was correct, would have absolutely defeated that action. He was not misled or lulled into a feeling of security by anything which Childs & Co. did. Its position was open and aboveboard. Petry suffered himself to get in default. After his default, Childs & Co. did not enter judgment until its attorneys had twice written him of their intention to do so. And not until 8 days after they had last written him to that effect, and 18 days after the default was complete, was judgment entered. Even after Petry was in default there was a period of 18 days, during which he might have sought permission of the court to interpose an answer, and in the meantime have stayed the proceedings of Childs & Co., as he subsequently did after the judgment was entered.

It is not very material whether or not the contention of the plaintiff in that action was correct as to the unpaid costs. Such contention, right or wrong, was manifestly made in good faith. The proper remedy on the part of Petry was to interpose an answer to that action. Failing to do so, and refusing to comply with the demand of Childs & Co., there was nothing left for the latter to do but to enter judgment or abandon its claim. The judgment was regularly entered, with full knowledge on the part of Petry that it was to be so entered, and after ample opportunity before his default to interpose an answer, and after his default to make a motion for leave to interpose such answer. His position is no different from that of any other person who suffers default and permits a judgment to be entered against him. If this action can prevail, then any person who is sued may make default in pleading, and then maintain an action like this merely by showing that he had a defense to the action in which he so suffered default.

For the reasons above stated, the complaint at the trial was properly dismissed, and it is unnecessary to consider whether the plaintiff in the former action waived its right to costs by accepting the check of Petry, or the effect on this action of the order in the former action made by Mr. Justice Andrews at Special Term.

Motion denied.