[No. 8001.]

## DRENNEN V. WILLIAMS.

1. PLEADINGS—*Objections Taken at the Trial*, are not favorably considered. (309..)

2. —— *Amendment at Trial.* Action to enforce specific performance. The answer alleged fraud on the part of the plaintiff in procuring the agreement. At the trial it was ruled that the reply to the allegations of fraud involved a negative pregnant, and so, in effect, admitted the alleged misrepresentation. The application of plaintiff for leave to amend his reply was denied, and the action dismissed. It appearing that defendant could not have been misled by the supposed fault in the plaintiff's pleading it was held error to refuse plaintiff's application to amend. (308, 309.)

3. ——*Negative Pregnant.* There can never be a negative pregnant where there is a general denial. (309.)

4. —— *Construed.* The answer to a bill for specific performance, assuming to set up fraudulent misrepresentations of plaintiff inducing the contract, construed, and held to fail to display the supposed misrepresentation. (310, 311.)

5. SPECIFIC PERFORMANCE—*Certainty of Contract.* A description of lands by name, quantity and location, e. g., as by reference to an adjoining town is sufficient. (302, 303, 309.)

6. —— *Description aided by Averment.* The lands being described in the contract, some of them by name, and others by quantity and location, allegations setting forth the numbers of the town, range, and section, or parts of section, intended to be conveyed, admitted by the answer, cure the supposed uncertainty of the contract. (309, 310.)

7. —— *Lands Not Owned by Vendor.* One contracting to convey land of which he is not the owner does not escape liability by suggesting the absence of title. Contracting for himself he is personally liable. (312.)

8. EQUITY—*Reformation of Writings,* unnecessary where the parties by their pleadings agree upon what in particular was intended by the general words of the writing. (312.)

*Error to Washington District Court.* Hon. H. P. BURKE, Judge.

Messrs. TAYLOR & PENDELL, for plaintiff in error.

Mr. H. P. BENNETT, JR., Messrs. VAN CISE, GRANT & VAN CISE, for defendant in error.

SCOTT, J., delivered the opinion of the court.

On the 15th day of April, 1911, the parties to this action entered into a written agreement as follows:

"AGREEMENT, made and entered into this 15th day of April, A. D. 1911, by and between A. J. Williams, of the first part, and Ralph R. Drennen, of the second part, WITNESSETH, That for and in consideration of their mutual agreements hereinafter set down, the said parties have agreed and do hereby agree, as follows, to-wit:

FIRST: The party of the first part has this day sold to party of second, 1760 acres of land as agreed upon, and known as the Williams Ranch, in Washington County, Colorado, and will within 10 days from this date, deliver to second party abstracts of title covering all of said lands, showing title free and clear of encumbrance.

SECOND: Party of second part has this day sold to the first party, the following lands in Morgan County, Colorado, an eighty-acre tract located one and one-half miles West of Fort Morgan, with an encumbrance of $3135.00,

and a Forty-acre tract located one-half mile South of Fort Morgan, with an encumbrance of $4350.00, and one lot in the City of Fort Morgan, with an encumbrance of $400.00, two other lots in Fort Morgan, both free and clear of encumbrance, and will within 10 days deliver to the first party abstracts of title showing title free and clear of all encumbrance except as above, and all lateral rights pertaining to said lands, being three in number.

THIRD: It is understood and agreed that one section of said lands, out of the 1760 acres above is what is known as State School Land, upon which the first party holds a contract of sale from the state of Colorado; and he will proceed as rapidly as possible to secure title thereto, and in event it takes more than ten days, he shall have whatever time is reasonable to do so.

FOURTH: Party of second part shall execute and deliver to first party, one promissory note for the sum of $32,-245.00 due in ten years from the date of closing the deal, bearing interest at the rate of six per cent per annum, payable annually; and will secure the same by trust deed to Public Trustee of Washington County, Colorado, upon the whole of said 1760 acres above mentioned. (It is agreed, however, that second party will on or before November first, pay one full year's interest on the above amount, less interest at six per cent on the unearned interest then due.)

FIFTH: First party will assume and agree to pay the mortgages on the Morgan County lands, and the lot in Fort Morgan above mentioned.

SIXTH: First party will also upon the closing of the deal, execute a bill of sale, transferring and delivering 176 head of mixed cattle, being 76 head of two year old steers; and the balance being heifers, cows, and steers; and certain farming implements, as already agreed upon, and also certain other live stock and other articles heretofore agreed upon.

SEVENTH: First party will also assume and pay water levy on said Morgan County tracts for the year 1910, being due and payable in the year 1911.

A. J. WILLIAMS.
R. R. DRENNEN."

The complaint alleges and the answer admits that each party carefully and personally inspected all the property he was to receive under the agreement, before the execution of that instrument.

It is further alleged in the complaint that at the time the agreement was executed the parties did not have at hand the definite or legal description of the lands involved, so as to insert these in the agreement, but that each party was familiar with and fully understood what property was intended to be exchanged.

The complaint then sets forth the legal descriptions of all the lands and a specific description of the personal property intended to be exchanged and transferred by the parties and which descriptions are admitted by defendant's answer to be correct.

The complaint further alleges that title to certain of the lands which plaintiff, Drennen, was to convey to the defendant, Williams, was in one Eliza J. Drennen, mother of the plaintiff, who was present at the execution of the agreement, and assented thereto.

It is then alleged that the plaintiff on the 25th day of April, following the date of the agreement, offered to perform all upon his part as agreed, and demanded of Williams abstracts of title to the lands which he had agreed to convey, but that the defendant refused to so comply with his agreement, and that afterward and on the 22d day of May, 1911, he tendered to the defendant the following instruments:

"A warranty deed from plaintiff to defendant for Tract No. 1, above described. Also warranty deed from Eliza J.

Drennen to defendant to the remaining tracts, viz: 2, 3, and 4. Also an assignment of one share of the capital stock of the Bijou No. 2 Lateral Company, also an assignment of two shares of the capital stock of the Bijou No. 3 Lateral Company, being the same water stock as described in said contract above set out. Also a deed of trust to the Public Trustee of Washington County, for the use of defendant and covering all of the land described above, and being in Washington County, Colorado, as provided in said contract. Also a promissory note dated May 22, 1911, for thirty-two thousand two hundred and forty-five dollars ($32,245.00), payable ten years after date to the order of said defendant, with interest at six per cent per annum until paid, interest payable annually. And also abstracts of title to all of the Morgan county lands hereinabove described and embraced in said contract and that plaintiff otherwise has duly performed all of the conditions of said agreement on his part."

It is then alleged:

"That at the time of the last tender, on May 22d. 1911, the defendant refused positively to perform his portion of said contract in any particular whatever, but demanded of plaintiff additional security, to-wit: a chattel mortgage on the cattle, and all other personal property above described, as a further security of the deed of trust and note above described, but which was not apprehended in, nor in any sense a part of the said contract for exchange above set out."

Willingness and ability at all times upon the part of Drennen, the plaintiff, to comply with his part of the agreement was alleged. The prayer was for a reformation of the contract to conform to specific descriptions of the property referred to in the agreement; for a specific performance of the contract; or that in the event that specific performance cannot be had, then for damages for the alleged breach of the contract.

The answer substantially admits all the allegations of

the complaint, but alleges as a defense, that the defendant was induced to enter into the agreement by the fraudulent and false representations of the plaintiff, and that the defendant was at the time of the agreement and since, the owner of only 320 acres of land so agreed to be conveyed, and that the remainder was the property of his wife, except the school land section, title to which was in the State of Colorado.

Also, that a one-half interest in the cattle was the property of defendant's son, and that specific performance can not be had, for the reason that upon learning of the alleged fraud, the wife and son of the defendant refused to make conveyance of their respective interests in the property which the defendant had so agreed to convey.

The only allegations in the answer which may be said to relate to acts of fraud are as follows:

"Defendant alleges that the plaintiff herein, by fraud and deceit, and for the purpose of defrauding and cheating this defendant out of his property, and cheating the wife and son of this defendant out of their property, set about in a systematic way to cheat, wrong and defraud this defendant, his wife and son out of their said property, the false and fraudulent manner and means employed and used by the plaintiff is more fully set out as follows, to-wit:

Defendant alleges that the plaintiff secured the forty-acre tract described in the amended complaint as Tract One and had the same mortgaged for more than the land was worth; that the Tracts of land, Two, Three and Four, mentioned in the amended complaint, were also mortgaged for more than the said land was worth; that the said plaintiff undertook to buy the 1760 acres of land mentioned in the amended complaint as the property of the defendant herein, which was, in fact, the property of the defendant and his wife, and undertook to buy a great deal of personal property consisting of 176 head of neat cattle which belonged to this

defendant and his son, and also certain horses, machinery, and so forth, and, to induce the defendant herein to enter into a written contract for the sale of the said property to the plaintiff, the said plaintiff falsely and fraudulently represented to this defendant that for Tract One he had ample water rights to sufficiently and systematically irrigate the said land; that he owned these water rights in the Bijou reservoir; and falsely and fraudulently represented that for Tract Two, which was the eighty-acre tract of land referred to in the amended complaint as belonging to Eliza J. Drennen, he had certain water rights in the Bijou Ditch Company and Bijou reservoir sufficient to thoroughly and systematically irrigate the said land at all times, and did falsely represent to the defendant herein that there was at said time, to-wit, in the month of April, 1911, water in The Bijou Reservoir twenty-five feet deep which was available for the irrigation of lands lying under the said reservoir and susceptible of irrigation from the same, and particularly including the said Tracts numbered One and Two; that the said plaintiff did falsely and fraudulently represent to this defendant that he owned these water rights, and would transfer the said water rights to the defendant herein in connection with Tracts One and Two, and that the same would be sufficient at all times to systematically irrigate the said land; and the plaintiff did falsely and fraudulently represent to this defendant that on the 15th day of April, 1911, the water would be turned into The Bijou Lateral numbered Two and Three, and that it would be necessary for some one to be there to take care of the large volume of water that would be conducted to Tracts Number One and Number Two; and this defendant, being unacquainted with the system of irrigation and wholly relying upon the said false and fraudulent representations of the plaintiff, and believing the said representations to be true, did consent to transfer the said 1760 acres of land and the said 176 head of neat cattle

(said cattle to be transferred under certain conditions here-inafter more fully set out,) and this defendant was induced to sign the said written agreement.

Defendant further alleges that the plaintiff falsely and fraudulently represented to this defendant that his rights and stock in Bijou Number Two Lateral, which was one share, and his stock in Bijou Number Three Lateral, which was two shares, which was referred to in the said written agreement as the lateral rights pertaining to the said land, being three in number, represented ample and sufficient water in the Bijou Ditch Company and Bijou reservoir to systematically irrigate the said land at all times, when the same needed irrigation; that the said source of supply of water was sure and certain."

The replication, in so far as it is necessary now to re-fer, denies the allegations of the answer as to fraud and deceit and particularly as these concern the water rights, and affirmatively alleges that defendant had full information upon that subject, and knew them to be as stated in the complaint, and also that defendant had made personal inspection of the ditches and water rights.

There are many allegations in the answer and replication which seem to be wholly immaterial.

At the time of the trial, objection was made by the defendant to the introduction of any testimony upon the part of the plaintiff, which objection was sustained and judgment of dismissal entered.

The objection of the defendant seems to have been sustained upon the ground that the replication of the plaintiff in its attempted denial of the allegations of alleged fraud, was in the form of a negative pregnant, and therefore constituted an admission of such allegations without denying or avoiding them.

The language of the plaintiff's replication so questioned, is as follows:

"Plaintiff denies that he set about in a systematic way, or in any other way, to cheat, wrong or defraud the defendant or his wife, or his son, out of their property, either real or personal, as alleged in said amended answer."

The plaintiff asked permission to amend in the particular named, by striking out the words "as alleged in said amended answer." This request was denied. In this the court erred. It is plain that the defendant was not and could not have been misled by the pleading. He had ample opportunity to raise the question before the time of the trial, and the question being raised upon the trial, substantial justice demanded that the requested amendment be allowed, even though the point against the pleading may have been well taken. Mere technicalities find but little favor with courts of justice in this day, where the strong tendency is to look to the language and spirit of the code requiring that substantial justice be done.

But the replication in addition, contained a general denial, and also a specific denial of each allegation alleged to constitute acts of fraud.

It is held generally that where the objection is not made before the time of trial, as in this case, and when it does not appear that the party complaining is prejudiced, courts will not favorably consider it. Also, that where it clearly appears from other parts of the answer, that the allegations formally admitted by reason of the negative pregnant are in fact denied, the answer will be held good. In addition to this, and that in as much as a general denial puts in issue every allegation in the complaint, there can never be a negative pregnant in such case. 31 Cyc. 203.

The objection to the introduction of testimony was further based upon the ground that the complaint does not state facts sufficient in law to constitute a cause of action, in that the contract was void upon its face because of defective description of the property. This is not tenable. But if this

description in the contract was subject to such objection in the first instance, the admission in the answer, of the correctness of the definite descriptions of the property set forth in the complaint, as being the same that was intended by the contract, removes the objection, for the pleadings thus form an agreement in supplying any omission or defect in the contract in that particular, and so eliminates any question or dispute as to the property intended to be included within the agreement.

The plaintiff in error assigns as error the action of the court in overruling his demurrer to the answer of the defendant upon the ground that the answer did not state facts sufficient to constitute a defense. In as much as the cause may be again tried it may be important to consider this question. The allegations do not constitute actionable fraud, when considered in the light of all the admitted facts. It is admitted that the specific water rights referred to are exactly the same as are named in the contract and complaint, the assignment of which is admitted to have been tendered by the plaintiff, and there is no allegation that the plaintiff was not at the time the owner of the same, nor that the assignments were not executed and tendered by the actual owners of such water rights, with full power to convey the title to the same.

Water rights are decreed in specific measurements and there is no allegation that there was any misrepresentation in this regard. It is admitted by the defendant that he examined the lands and ditches prior to the execution of the contract, and had full opportunity to ascertain the amount and volume of water to be supplied under the rights which he agreed to purchase. It is not even suggested that the plaintiff represented that he owned or would convey to the defendant other or different water rights than those specifically agreed. Beside, the answer alleges:

"Defendant alleges further that upon his informing the

plaintiff, that he, the defendant herein, had learned that the plaintiff had deceived him, and had willfully misrepresented his holdings and rights in connection with the said land, Tracts Number One and Number Two, the said plaintiff thereupon agreed that if this defendant would secure the transfer of the said property mentioned in the said written agreement that he, the plaintiff herein, would furnish ample security for the said property. Thereupon the parties hereto undertook to make a new agreement, but owing to the plaintiffs wholly failing to furnish sufficient security so that the defendant, his wife and son would be secured for the property which the plaintiff desired, the said plaintiff and defendant wholly failed to make any agreement respecting the same."

This is frank confession that what the defendant wanted was additional security to that named in the contract for the sum represented by the plaintiff's agreed promissory note.

It will be observed that the proposed new agreement did not contemplate any change as to water rights, nor any deduction by reason of the alleged insufficiency thereof, but that the defendant's refusal to keep his agreement "was owing to the plaintiff's wholly failing to furnish sufficient security so that the defendant, his wife and son, would be secured for the property which the plaintiff desired, and the said plaintiff and defendant wholly failed to make any agreement respecting the same."

The demurrer to the answer should have been sustained.

It is contended by the defendant in error, that there can be no specific performance in this case for the reason that neither party was nor is the owner of all the property which he agreed to convey. This contention cannot avail as applied to the property of the plaintiff, for it is admitted that proper and sufficient conveyances were tendered.

If, as alleged, the defendant was and is not the owner of all the lands and personal property he so agreed to con-

vey, and was without power to make such conveyance, and if the owners of a part of this property refuse to convey, then of course such specific performance cannot be had, at least as to that part of the property which was not within the power of defendant to convey.  But this does not relieve the defendant from any liability that may have occurred by reason of a breach of his own contract.  He knew when he made the contract that he was not the owner of the land, and that he had no power to sell or convey.  He must be held to be personally liable on the contract, for it was his own. In order to exempt the contracting party from personal liability, he must so contract as to bind those he claims to represent.  *Bush v. Cole,* 28 N. Y. 261, 84 Am. Dec. 343.

The case of *Pumpelly v. Phelps,* 40 N. Y. 59, 100 Am. Dec. 463, was very similar to the one at bar.  The action was for specific performance, and for damage in case specific performance could not be had, and it was there said:

"Where a party contracts to sell lands, which he knows at the time, he has not the power to sell and convey; and, if he violates his contract in the latter case, he should be held to make good to the vendee the loss of his bargain, and it does not excuse the vendor, that he may have acted in good faith and believed, when he entered into the contract that he should be able to procure a good title for his purchaser."

Many authorities are there cited in support of the rule thus announced.  There is no necessity for a reformation of the contract for the reason that the parties by their pleadings have agreed upon its interpretation.

*The judgment is reversed.*

GABBERT, C. J., and GARRIGUES, J., concur.

Decided April 5, A. D. 1915.  Rehearing denied May 3, A. D. 1915.