THOMAS M. MOODY *versus* EDWARD C. BURTON *&* al.

Where a fraudulent conveyance of property is made for the purpose and with the intent to defraud creditors, an action on the case to recover damages, for that cause, by one of those creditors, against the parties to such fraudulent conveyance, cannot be sustained.

THIS was an action of trespass on the case against Burton, Rice, Adams and Hardy.

WHITMAN C. J. presiding at the trial, being of opinion, that the plaintiff could not in law support this action, if the facts alleged were proved, directed a nonsuit. The plaintiff filed exceptions. The facts are sufficiently stated at the commencement of the opinion of the Court.

In October, 1847, full written arguments were sent to the Court, it having been agreed at the June Term preceding, that the case should be argued in writing, by

*J. Appleton* and *Ingersoll,* for the plaintiff — and by

*A. W. Paine,* for the defendants.

*In the arguments for the plaintiff,* it was contended, that the plaintiff's declaration sets forth, in different modes, a claim on his part and a conspiracy on the part of the defendants to prevent his securing his debt by attachment, and to deprive him of all compensation for his services.

The material question then is, whether an action on the case for conspiracy against individuals, conspiring with a debtor to prevent a creditor from attaching such debtor's property,

and to defraud him of his debt, is maintainable. It would be a reproach to the law, if it was not.

The case of *Adams* v. *Paige & al.* 7 Pick. 542, settles the law, that in case of a conspiracy to defraud, a suit at the instance of the creditor is maintainable. The case of *Adams* v. *Paige*, in every important point, precisely resembles the one now before the Court. The end being the same, the means used are comparatively unimportant. The end in view, is the same in each, to defraud a creditor of his debt, to prevent, by means of fraudulent and fictitious proceedings, his securing the debt due.

The counsel here examined the facts in each case, and insisted, that there was no essential difference in the two cases.

The decision of the court in *Adams* v. *Paige*, is supported by the general principles of law, and by the cases of *Smith* v. *Tonstall*, Carth. 3 ; *Yates* v. *Joyce*, 11 Johns. R. 136 ; *Moore* v. *Tracy*, 7 Wend. 229. The case of *Penrod* v. *Mitchell*, 8 S. & R. is directly in point, and *Penrod* v. *Morrison*, 2 Penn. 126, goes quite as far as we contend the law to be.

This is the proper action ; and it is rightly brought. Com. Dig. Action for conspiracy, A ; 6 T. R. 634 ; 4 S. & R. 19 ; 7 Metc. 520 ; 7 Pick. 547 ; 2 Penn. R. 126.

*For the defendants,* these points, among others, were made.

In order for the plaintiff to maintain this action, he must show first, a right, — second, an injury done to that right by the defendants. 4 Burr. 2346, — and third, in a special action on the case, like the present, the facts must all be particularly specified in the plaintiff's declaration. 2 Greenl. on Ev. $ 254, and cases there cited.

The plaintiff had no right here to be affected or injured. He had no interest as owner, in the least degree; neither had he any lien by contract or attachment on the property in question. The most that can be alleged is, that the plaintiff had a chance of acquiring a right to the property by attachment. It would be like the case of one who has interfered to prevent a supposed good bargain, which is not an injury for which the

Moody *v.* Burton.

law would give damages.   4 Pick. 425 ; 23 Pick. 224.   On the facts, as stated by the plaintiff in his declaration, he had not even this chance.   But if he had any, it was a mere contingent one.   The defendants, who were summoned as trustees, were discharged, and the only ground of discharge, as the declaration alleges, was their false answers as trustees.   For that, another and a particular remedy is provided by statute, and for that cause this action cannot be supported.   Besides, the trustee process can create no lien or charge upon the property, but merely on the person.

Even if the plaintiff had a right, the defendants have done no wrongful act affecting that right.   The fact, that the defendants' acts were all done prior in time, to the alleged existence or inception of the plaintiff's right, would seem to be sufficient to establish this position.

The injury for which the law will give damages must be the natural and proximate consequence of the wrongful act complained of; not remote and consequential, but certain and direct.   4 Burr. 2345 ; 2 Greenl. Ev. § 256.   Besides, other creditors might have attached before the plaintiff and taken the property, so that on this account the damage was altogether uncertain and contingent.

It must appear, that the injury complained of, was one done especially to the plaintiff, and not to him, only in common with others.   Co. Lit. 56, (a) ; 7 Metc. 283.   Even in equity, the Court will not set aside a conveyance as fraudulent, in behalf of a creditor, until he has first levied his execution upon the land.

It was here argued, that there could be no rule or principle upon which damages could be assessed ; and it was said, that the argument from inconvenience was entitled to great weight. 23 Pick. 224.

This plaintiff has no rights over other creditors.   If one can sue, all may, and that too without reference to the amount of goods fraudulently covered.

But we have direct authority that an action of this description cannot be supported.   *Smith* v. *Blake,* 1 Day's Cases,

258; *Lamb* v. *Stone,* 11 Pick. 527. These cases, and especially the latter, are directly in point. It was decided with great deliberation, and overrules *Adams* v. *Paige,* relied on by the plaintiff, if that case is actually in his favor. Whatever may be the technical form, the facts stated in *Lamb* v. *Stone,* are the same as in the case at bar. On the contrary, the material facts in this case, are the reverse of those in *Adams* v. *Paige.* There, the plaintiff had a plain and undisputed lien by attachment of the goods, which was defeated by the subsequent fraudulent sale of the goods on the execution of the defendants. There, the allegation and proof was, that the wrongful act was done and intended for the injury of the plaintiff, and he alone suffered. Here, on the plaintiff's own allegations all the creditors suffered alike. There, there was a certain and direct injury. Here, there was no certainty, or even probability, that the plaintiff could have taken this property, if the mortgage had not been made.

An argument is also deducible from the fact, that the statute has provided a special remedy to meet a case like the present, which remedy will exclude any remedy supposed to exist at common law. Rev. Stat. c. 148, § 49.

Comments were also made upon the other cases cited for the plaintiff.

*For the plaintiff in reply,* it was said, among other remarks, that the acts of the defendants were wrongful in themselves, and were intended to and did injure the plaintiff. Depriving a creditor of his debt was the end proposed in the present case as well as in *Adams* v. *Paige.* Variation in the means used in a conspiracy, cannot have the effect of discharging from legal liability, those who conspired.

The creditor has rights to the property of his debtor, that it shall be appropriated to the payment of debts; and any act tending to deprive him of that right, by means of fictitious sales or mortgages, is a fraud. There was as much ownership on the part of the plaintiff as in the case of *Penrod* v. *Morrison.*

It was insisted, that the declaration did show, that the plaintiff's debt was contracted before the fraudulent mortgage.

Whether rights were acquired by virtue of the trustee process or not, is immaterial. We say they were; but if they were not, we claim to recover on the ground, that the defendants conspired together to place this property out of the reach of attachment, and to deprive the plaintiff of all means of securing his debt. He claims to recover on the very grounds distinctly laid down in *Adams* v. *Paige* and in *Penrod* v. *Morrison*.

If a part of the defendants were liable under the statute for a false disclosure, it by no means follows, that all are not liable for a conspiracy.

There is no such difficulty, as to the amount of damages as has been argued. The loss of the whole of the plaintiff's debt was the direct consequence of the fraudulent acts of the defendants.

It is a sufficient reply to the objection, that the injury to the plaintiff was but a common one with other creditors, that the averments in this case are, on this subject, precisely those in *Penrod* v. *Morrison*.

The case of *Lamb* v. *Stone*, neither overrules nor pretends to overrule the case of *Adams* v. *Paige*. The latter is still the law of the land. The case of *Lamb* v. *Stone* is not an action of conspiracy, or case in the nature of conspiracy. It is not founded upon any illegal combination or confederacy, and the declaration does not set forth any conspiracy to defraud the plaintiff or defeat any legal process. The plaintiff's writ in the present case is the reverse of this in all these particulars.

The opinion of the Court was drawn up by

SHEPLEY J. — This is an action on the case. The material facts stated in several counts, in the declaration are, that Burton being insolvent, entered into partnership with Rice, and that Burton and Rice, on November 13, 1843, made a conveyance in mortgage of certain personal property named, to Adams

and Hardy. That property, of the value of $25,000, was conveyed to secure a debt of $3500, alleged to be due to them. That the property was greatly undervalued. That it was to be forfeited to the mortgagees on failure of payment of the $3,500, on the fifteenth of December following. That it was agreed, that payment should not be made to redeem it, and that the property should become forfeited. That the mortgagees should not take advantage of the forfeiture, but should allow the mortgagors to have the control and benefit of the property. That the plaintiff, being a creditor of Burton, on May, 22, 1844, commenced a suit against him, and caused Adams and Hardy to be summoned as his trustees. That Hardy made a disclosure in that suit for himself and partner and claimed the property as forfeited to them. That they were upon such disclosure discharged. That the plaintiff recovered judgment against Burton, sued out an execution thereon, placed it in the hands of an officer for collection, and that he returned it in no part satisfied. It is alleged that all these acts were done by the defendants to place the property out of the reach of Burton's creditors, and with the intention to delay and defeat the plaintiff in any attempt made to collect his debt.

The presiding Judge being of opinion that the plaintiff upon proof of these facts, could not maintain his action, directed a nonsuit, and the case is presented by a bill of exceptions.

Stripped of the allegations describing the manner, in which the alleged fraud was perpetrated, the declaration presents the common case of a fraudulent conveyance of property, made for the purpose and with the intent to defraud creditors.

Creditors may consider such conveyances to be unlawful and void, and may cause the property to be applied to the payment of their debts by the use of any of the different legal and equitable processes applicable to their case and afforded by the law for that purpose. Some one of those processes has been found to be well suited to such a purpose, and by a proper selection and use of it, a creditor upon satisfactory proof

may obtain payment from property so conveyed, or from its proceeds in the hands of a fraudulent holder.

Omitting the selection of any of the long established remedies and the usual course of procedure, it is now proposed by an action on the case to seek, not the property fraudulently conveyed or its proceeds, but a judgment against those who were parties to the fraud, for the amount of damages, which the plaintiff can prove, that he has suffered by reason of such fraudulent conveyance. If such an action can be maintained in this, it may in every other case, where a fraudulent conveyance has been made of real or personal property with an intention to defraud creditors. If such an action upon such proof can be maintained by any one, it may be also by each creditor. There is nothing to give one a right superior to that of another. It is one of the essential elements of a special action on the case, that the plaintiff is entitled to recover damages for the injury which he has suffered, irrespective of the rights of other persons to recover in like manner damages for injuries suffered by them from the same act or cause. All are entitled to compensation for the injuries suffered from the same cause, and each may recover it for himself. The first suit commenced can have no effect upon subsequent suits commenced by others. The damages in such actions are not measured by proof or consideration of the benefit, which the wrongdoer may have derived from his wrongful or unlawful act. They are limited and measured only by the injury, which his conduct has occasioned. If therefore the principles which regulate this form of action are to be regarded and preserved, all creditors, who have been injured by a fraudulent conveyance of their debtor's property, must have an equal right to recover damages to the extent, to which each has thereby been a loser. And the effect upon a party receiving such a conveyance must be to subject him to damages in no degree regulated by the amount of property received, and limited only by the injury occasioned, it may be, to very numerous creditors similarly situated and injured. To place him in such a position the whole law regulating the rights and liabilities arising out of

proof, that one has received a conveyance of a debtor's property with an intention to defraud his creditors, must be changed. That law, as it has been administered in civil actions does not punish a person for becoming a party to such a fraud. Does not punish the debtor and vendor, who has thus conveyed his property. It only deprives the purchaser of all benefit to be derived from it, by declaring his title thus obtained to be void, when it may injuriously affect the rights of creditors. It leaves the moral turpitude and other injurious effect upon creditors and upon society to be punished, as the sovereign power may provide. To allow each creditor to maintain an action on the case against a fraudulent purchaser to recover damages, supposing them to be capable of legal estimation, would be to make use of a civil action for the recovery of sums, in the nature of a penalty, to the full amount of all, which could be recovered. For the fraudulent purchaser would acquire no legal title to hold that property against the rights of any such creditor by proof, that he had been compelled to pay many times its value. It would do this too, when there is a statute in this State authorising a recovery in the nature of a penalty, and yet limiting the liability of one, aiding a debtor in the fraudulent concealment or transfer of his property to prevent its attachment or seizure, to double the amount in value of the property concealed or transferred. If such an action as this may be maintained against a fraudulent vendee, it may, upon like principles, against the fraudulent vendor or against any *particeps fraudis*. And in such case the amount to be recovered must be wholly in its nature penal, more so than in a case of recovery by virtue of the provisions of the statute c. 148, § 49. This action has accordingly been as appropriately commenced against vendors as vendees. The debt of the creditor will not be satisfied *pro tanto* by a recovery and collection of damages from a vendee or a *particeps fraudis*. A debt due from one person cannot be satisfied by the recovery of damages from another person, unconnected with and a stranger to it, without some statute provision. The creditor would recover damages in satisfaction for an in-

jury suffered, not on account of a debt due and in satisfaction of it.

How are the damages, which a creditor may thus recover, to be proved and estimated? The plaintiff had obtained no lien on the property conveyed by attachment, judgment or in any other manner. Had no special property in or claim to it. The only proof of loss or injury, which he could make, would be, that his debtor had fraudulently conveyed his property without having received any value for it, and with the intent to avoid the payment of his debt. And that he had no other means of obtaining payment. All other creditors could make the same proof. Upon such proof he could not be entitled to recover the amount of his debt; for that is still subsisting, and it may yet be collected. Nor could he be entitled to recover the value of the property conveyed; for to that he had no better claim than other creditors. He has not therefore lost it. If it had not been fraudulently conveyed, it was as probable, that it might have been applied to the payment of other debts, as to his own. The debtor might have disposed of it fairly and for a valuable consideration; or have lost it by accident or misfortune. The only loss or injury shown by the proof would be, that he had been deprived of a chance or possibility of obtaining payment from that property. This would be stating his loss or injury too strongly, for he would still have the chance of attaching or securing it, or its proceeds, in the hands of the fraudulent holder. A jury would be authorized then to estimate the value only of his chance to secure it and have it applied to the payment of his debt while in the hands of his debtor; for this only has he lost. There would be no data, tables, or other means afforded, by which such a chance could be estimated. The loss or injury would be too uncertain and remote for legal estimation. An action like the present can be maintained only by proof of a direct, certain and material injury. *Benton* v. *Pratt*, 2 Wend. 385; *Lamb* v. *Stone*, 11 Pick. 527. In the case of *Pasley* v. *Freeman*, 3 T. R. 51, it was said, that the action would be maintained by proof of fraud and damage. While it was justly

stated in *Lamb* v. *Stone*, that there might be legal torts, in which the damage to individuals might be great, and yet so remote or contingent as to furnish no ground of action. The injury should be so definite and certain, that it may be particularly described in the declaration. And it should be proved as described. *Reynolds* v. *Kennedy*, 1 Wilson, 232. *Pangburn* v. *Bull*, 1 Wend. 345.

A still further objection to the maintenance of this action is, that the plaintiff does not appear to have suffered any damages, not common to all the creditors of Burton. Com. Dig. Action upon the Case, B. 2. One might as well maintain such an action against another for causing the air to become noxious from a nuisance equally affecting a whole neighborhood.

Most of the cases cited and relied upon for the maintenance of this action were examined and distinguished from a case like this in the opinion delivered by Mr. Justice Morton in *Lamb* v. *Stone*, in which there was an unsuccessful attempt made to maintain a similar action. It would be unnecessary to notice any of them again if the case of *Adams* v. *Paige*, 7 Pick. 550, had not been still relied upon as authority for the maintenance of this action. The essential difference between them consists in the fact, that the plaintiffs in that case had caused the goods of their debtor to be attached for the security of their debt, and had thereby acquired a right to have them by proper proceedings applied to the payment of their debt in preference to all other creditors, who had not previously caused them to be attached. Of this right, which proved to be a valuable one, they were deprived by the fraudulent conduct of the defendants. That constituted a good cause of action capable of proof, and of certain estimation, and one not common to all other creditors. In this case the plaintiff had no such lien or right.

In the case of *Moore* v. *Tracy*, 7 Wend. 229, the plaintiff was induced, by the fraudulent conduct of the defendants, to sell certain goods on credit to one known to the defendants to be insolvent, by which he lost their value.

The case of *Penrod* v. *Mitchell*, 8 S. & R. 522, and 2

Penn. 126, has been much relied upon, as an authority for the maintenance of the action. In neither of the opinions, delivered by eminent judges in that case, were the objections, which were stated in the case of *Lamb* v. *Stone*, or which have been here noticed, considered and obviated; and they are of a character too important to be yielded to mere authorty not binding upon this Court.

Under general leave to amend, the counsel for the plaintiff have presented with their arguments in writing a new count, drawn recently and since a nonsuit was entered. Not having been presented to the Court and allowed, it is not a part of the case presented by the exceptions taken at the trial. Yet if the action might thereby be sustained, the court might be induced to remove the nonsuit and to allow the amendment proposed to be made. There is an additional averment in it which, it is contended, may be material. It is that the defendants " corruptly did combine and conspire together," to defraud the plaintiff by the acts before stated. Whenever a premeditated fraudulent conveyance of property has been made, such an allegation might perhaps be made and proved. The law which defines and regulates the liabilities of the parties to a fraudulent conveyance, has not arisen and existed without a knowledge, that it might be so; and it cannot be varied by the insertion or omission of such an averment. It cannot in this case be essential, for the denial of the plaintiff's right to maintain the action has not arisen out of any defective or insufficient averments, but out of the insufficiency of the facts stated, to enable him to maintain it. The additional facts stated in the proposed count, are in substance that the plaintiff's debt was contracted before the conveyance was made in fraud of it, and that an attachment of the goods conveyed was prevented by the fraudulent representations of the defendants. It will be perceived, that the conclusion could not be different in accordance with the principles already stated, if such additional facts had been presented by the declaration.

*Exceptions overruled,*
*and nonsuit confirmed.*