HENRI M. BRAEM *et al.*, Appellants, *v.* THE MERCHANTS' NATIONAL BANK OF SYRACUSE, Respondent.

*N. Y. Supreme Court, Fourth Department, General Term, July* 20, 1889.

1. *Corporation. Offer of judgment.*—An offer of judgment made by a corporation in contemplation of insolvency, or with the view to giving the plaintiff a fraudulent preference, falls within the prohibition of the statute, and is void as to its creditors.

2. *Same.*—But in case there is an agreement between the company and plaintiff to give him security for an existing debt on demand, and the judgment is given in compliance with such agreement, the fact of the corporation's insolvency at the time does not furnish controlling evidence that such offer of judgment was made in contemplation of insolvency, and the question is one of fact for the jury.

3. *Same. Remedy of creditor.*—A judgment creditor cannot maintain an action at law against another judgment creditor for damages for issuing an execution upon his judgment before the former had any interest in the property, nor for afterwards receiving from the sheriff the amount of such judgment, though the judgment would have been held invalid and set aside in a proper action or proceeding for that purpose.

Appeal from a judgment in favor of defendant for costs, and from a decision at the circuit nonsuiting the plaintiffs and dismissing their complaint.

This was an action at law, to recover damages which the plaintiffs claim to have sustained by the wrongful acts of the defendant. The plaintiffs were copartners. The defendant was a corporation duly organized under the laws of the United States. The Syracuse Iron Works was a corporation duly organized under the general manufacturing laws of the state, and doing business at the city of Syracuse.

October 7, 1884, the plaintiffs recovered a judgment against the Syracuse Iron Works for $1,798,38, in the city

court of the city of New York.   On the 8th day of October, at nine o'clock A. M., a transcript of such judgment was duly filed in the office of the clerk of Onondaga county.   At half-past nine o'clock on the same day, an execution was duly issued thereon to the sheriff of Onondaga county.

On the 7th day of October, 1884, the defendant commenced an action against the Syracuse Iron Works upon three notes amounting to $15,000.

On the same day the Syracuse Iron Works, by its attorneys, offered judgment for the amount of such claim, with costs.   The offer was accepted by the defendant, and judgment was entered thereon in the office of the clerk of Onondaga county on that day for $15,073,31.   An execution was immediately issued thereon to the sheriff of Onondaga county, who levied upon the goods and chattels belonging to the Syracuse Iron Works.

On the same day, and before the entry of the defendant's judgment, one Mary E. Gere obtained judgment against the Syracuse Iron Works, and issued an execution thereon to said sheriff under which said sheriff first levied on such goods and chattels.   The property levied upon by said sheriff was sold on the 14th day of October, 1884.   The sheriff realized upon the sale an amount sufficient to pay the judgment in the action brought by Mary E. Gere, and $13,671,86 upon the judgment entered in the action brought by the defendant.

In July, 1884, an action was commenced by R. Nelson Gere against the Syracuse Iron Works and judgment was duly entered therein on the 7th day of October, 1884, and execution issued thereon after the executions in the case of Mary E. Gere, and of the defendant, were issued.   The execution of the R. Nelson Gere action was returned by the sheriff wholly unsatisfied, and thereupon, and upon the same day, R. Nelson Gere commenced an action against the said iron works for the sequestration of its property and for the appointment of a receiver.   The defendant appeared by its

attorney and admitted service of a notice of motion for the appointment of a temporary receiver on the same day at six o'clock P. M., and at that time an order was made appoint- ing Charles E. Hubbell as temporary receiver of said corpo- ration, but no notice of the application for such appoint- ment was served upon the attorney-general. On October 8th the temporary receiver thus appointed made and filed his bond.

On December 9, 1884, and before the commencement of this action, a permanent receiver of the property of said iron works was duly appointed in said action upon notice to the attorney-general. On the trial the proof tended to show that there was personal property of the value of $2,000, con- sisting of tools, etc., which belonged to said iron works and was not levied upon by said sheriff. The Syracuse Iron Works was insolvent on October 7, 1884. On the trial the court held that this action could not be maintained, and non- suited the plaintiffs.

*Wm. C. Holbrook*, for appellants.

*W. G. Tracy*, for respondent.

MARTIN, J.—The plaintiffs claim that as the Syracuse Iron Works was insolvent at the time of the offer by that company to allow judgment to be taken against it in favor of the defendant, the judgment was void, as being in con- travention of the statute which declares: "It shall not be lawful to make any transfer or assignment in contempla- tion of the insolvency of such company, to any person or persons whatever; and every such transfer and assignment to such officer, stockholder or other person, or in trust for them or their benefit, shall be utterly void." 1 R. S., part 1 chap. 18, title 4, § 4, 8th ed. p. 1729, § 4.

If the offer of judgment was made in contemplation of insolvency, or with the view to giving the defendant a fraudulent preference, then it would fall within the pro-

hibition of the statute and would be void as to the creditors of such corporation. Kingsley *v.* The First National Bank of Bath, 31 Hun, 329.

If, however, as the evidence tends to show, there was an existing agreement between the defendant and such company that the company should give the defendant security for the debt which was owing by it to the defendant whenever the defendant should demand it, and this judgment was given in pursuance and execution of such agreement, then the fact that the corporation was insolvent at the time would not furnish controlling evidence that such offer of judgment was made in contemplation of insolvency. Paulding *v.* The Chrome Steel Co., 94 N. Y. 334.

The question whether the offer of judgment was made in contemplation of insolvency was a question of fact for the jury, and should have been submitted to them unless there were other reasons why this action could not be maintained. Therefore, for the purpose of examining the other questions in this case, it must be assumed that the question would have been determined in the plaintiffs' favor.

The plaintiffs also claim that as the judgment recovered by the defendant was void, they can maintain an action at law for the damages they claim to have sustained by the alleged wrongful act of the defendant in issuing an execution against the property of such corporation upon a void judgment.

The iron works was actually indebted to the defendant to the amount claimed, and an action was commenced to collect such debt. The company admitted that the sum claimed was due, and offered judgment therefor. The defendant accepted such offer, and entered judgment thereon for the amount offered. Execution was then issued thereon and delivered to the sheriff of Onondaga county. The sheriff levied upon the property of the iron works, sold it, and paid the amount of an execution under which a previous levy had been made, and the remainder of the proceeds of such

sale was applied upon the execution issued upon the defendant's judgment. When the defendant's judgment was entered, the execution issued thereon, and a levy made under it, the plaintiffs had acquired no lien upon or interest in the property sold. No transcript of their judgment had then been filed or docketed in Onondaga county. The defendant performed no act after the plaintiff's judgment was docketed in Onondaga county which in any way interfered with the rights of the plaintiffs. It is true it received certain moneys from the sheriff to apply on its judgment, but in so doing, it in no way interfered with or impaired any right which the plaintiffs had acquired. The act of which the plaintiffs complain, and for which this action was brought was performed on the day previous to the docketing of their judgment in that county.

The weakness of the plaintiffs' claim seems to rest in the fact that at the time of the issuing of defendant's execution, and the levy by the sheriff, the plaintiffs had obtained no lien upon or interest in the property in question. The plaintiffs had acquired no legal right which was invaded by the act complained of. A right of action to enforce a merely moral or imperfect obligation does not exist. Ashley *v.* Dixon, 48 N. Y. 430, 432.

An act which does not amount to a legal injury cannot be actionable, even if done with a bad intent. Stevenson *v.* Newnham, 13 C. B. 285.

It is essential to an action of tort that the action complained of should be legally wrongful as regarding the party complaining; *i. e.*, it must prejudicially affect him in some legal right. The fact that it will, however, directly do him harm in his interests is not enough. Rogers *v.* Rajendro Dutt, 13 Moore, P. C. 209; 8 Moore, I. A. 103; 9 W. R. 149.

A plaintiff who has procured an execution to be levied upon personal property of a defendant cannot sustain an action against a wrongdoer for taking such property out of

the possession of the officer. Barker *v.* Mathews, 1 Den. 335 ; Ansonia Brass and Copper Co. *v.* Pratt, 10 Hun, 443 ; Skinner *v.* Stuart, 39 Barb. 206 ; Steffin *v.* Lockwood, 17 Week. Dig. 418.

In Adler *v.* Fenton (24 How. U. S. 407), where a creditor, whose debt was not yet due at the time of bringing the action, brought a suit against his debtors and two other persons, for a conspiracy to enable the debtors to dispose of their property fraudulently so as to hinder and defeat the creditors in the collection of their lawful demands, it was held that the action would not lie.

In Moran *v.* Dawes (Hopkins' Ch. 365), it was held that the court had no jurisdiction to restrain a defendant in a suit at law, after verdict against him and before judgment, from alienating his property. In delivering the opinion in that case the chancellor says :

" It suffices for the determination of this question that, by our law, the complainant has no lien or rights in the lands of the defendant ; that the defendant may, notwithstanding the pendency of the suit against him, sell his lands ; and that equity does not vary these legal rights."

In Hutchins *v.* Hutchins (7 Hill, 104), where the defendants, after a will had been made and executed devising certain real estate to A., conspired with each other to induce the testator to revoke it, and effected their object by means of false and fraudulent representations, it was held that A. could not maintain an action, as the revocation of the will merely deprived him of an expected gratuity, without interfering with any of his rights.

In Murtha *v.* Curley (47 N. Y. Supr. [15 J. & S.], 393), it was held that an action for damages only cannot be maintained upon proof that defendant conspired with plaintiff's judgment debtor to defraud plaintiff of his debt, by taking and foreclosing a fraudulent chattel mortgage upon the debtor's property and selling the property covered thereby, before the issue of execution on such judgment. It must

appear that plaintiff had, at the time of the alleged wrongful acts, some interest in, or lien upon the property, which could be the subject of damage. It seems that the proper action in such cases is in the nature of a creditor's bill to set aside the mortgage, and that the judgment therein should direct that defendant account for the property mortgaged, or its proceeds.

In Wellington *v.* Small (3 Cush. 145), in an action on the case, brought against two defendants, it was alleged that one of them was indebted to the plaintiff; that the two confederated and conspired together to prevent the plaintiff from obtaining security for or payment of his debt; that in pursuance of such purpose and intention, and in order to enable the plaintiff's debtor to take the poor debtor's oath, the defendants caused the property of the latter to be removed from his own custody and possession into the possession of the other defendant, by whom the same or the proceeds thereof were kept secreted and concealed from attachment; that the plaintiff sued out a writ against his debtor to recover the debt aforesaid, and caused his body to be arrested thereon; that the defendant in the said suit took the poor debtor's oath and was discharged from arrest; and that the plaintiff entered the same and recovered a judgment therein which remained wholly unpaid. The plaintiff at the trial gave evidence of everything alleged in the declaration, except the fact of conspiracy, of which there was no direct proof. It was held that the action could not be maintained.

In Randall *v.* Hazelton (12 Allen, 412), where a mortgagee of land voluntarily promised the mortgagor not to act under a power of sale contained in the mortgage without notice to him, but was afterwards induced by falsehood to assign the mortgage to persons, who thereupon proceeded to sell the land, under the power of sale, without notice to the mortgagor and clandestinely, whereby the latter was deprived of his equity of redemption, it was held

that he could maintain no action at law against the parties guilty of the fraud.

In Lamb *v.* Stone (11 Pick. 527), which was an action on the case for the fraud of the defendant in purchasing personal property of the plaintiff's debtor and aiding the debtor to abscond, in order to prevent the plaintiff from enforcing payment of his debt by attaching the property or arresting the body of the debtor, it was held that the action could not be sustained, but that the proper remedy was either to attach specifically the property fraudulently transferred or to attach it in the defendant's hands by the trustee process.

In Bradley *v.* Fuller (118 Mass. 239), it was held that if a person who has a claim against a corporation, which he intends to enforce by an attachment of its property, is induced by the false and fraudulent representations of its treasurer to refrain from making the attachment, and all the property of the corporation is subsequently attached for the debt of another person, and is sold on execution, an action of tort for such fraudulent representations will not lie against the treasurer.

In Brown *v.* London, TWISDEN, J., said: " I remember an action upon the case was brought, for that the defendant had taken away his goods and hidden them in such secret places that the plaintiff could not come at them to take them in execution; and it was adjudged it would not lie." **1** Mod. 286.

In Platt *v.* Potts (13 Ired. 455), where a creditor had placed a note in the hands of an officer for collection, and another, by persuasion, induced the officer not to collect, and the debtor not to pay, the debt, it was held that the creditor had no ground for an action on the case against the other parties.

In Matthews *v.* Pass (19 Ga. 141), where a person aided a debtor to remove himself and his property out of the

state, held that an action on the case would not lie against such person at the suit of the creditor.

In Kelly *v.* McCaw (29 Ala. 227), it was held that an action would not lie to recover damages for the defendant's fraudulent and wrongful act in inducing the sheriff to release and discharge from his possession certain property on which an execution had been levied in favor of the plaintiff against a third person, and which defendant removed so that it could not afterwards be found, the defendant in the execution being insolvent, and having no other property out of which said execution could be satisfied.

The cases cited by the plaintiffs are distinguishable from the case at bar, and fall far short of sustaining the doctrine contended for by them. In Yates *v.* Joyce (11 John. 136) the plaintiff had a judgment, which was a *lien* on the property removed. In Brown *v.* Feeter (7 Wend. 301) the plaintiff *owned* the property taken by the direction of the defendant. In Van Pelt *v.* McGraw (4 N. Y. 110) the plaintiff's mortgage was a *lien* on the property removed, and the waste committed was a direct injury to such lien. In Kerr *v.* Mount (28 N. Y. 659) the defendant's testator caused the *property of the plaintiff* to be taken on an irregular attachment. The case of Quinby *v.* Strauss (90 N. Y. 664) is so meagerly reported that it is impossible to determine what was decided in that case. There are expressions in the portion of the opinion quoted which might perhaps be construed as being somewhat in conflict with some of the cases above cited, but we are unable to discover that any principle is established by that case which would uphold a recovery in the case at bar.

While it may be that the plaintiffs might have maintained a suit in equity to set aside the defendant's judgment and in aid of their execution while in the hands of the sheriff, or might by motion have compelled the sheriff to apply the money in his hands so far as necessary to the payment of their judgment, still, following the principle of the authorities

cited, we are of the opinion that they could not maintain an action at law against the defendant for damages for issuing an execution upon its judgment before they had any interest in the property sold, nor for afterwards receiving from the sheriff the amount of its judgment, although it should be conceded that the defendant's judgment would have been held invalid and set aside as against them in a proper action or proceeding for that purpose.

We think the learned trial justice properly nonsuited the plaintiffs, and that the judgment appealed from should be affirmed.

Judgment affirmed, with costs.

HARDIN, P. J., and MERWIN, J., concur.