(10 Misc. Rep. 353.)

HURWITZ v. HURWITZ et al.

(Common Pleas of New York City and County, General Term.  December 3, 1894.)

ACTION ON THE CASE—WHEN LIES—CONSPIRACY.

   Before lien acquired on the property of his debtor, a judgment creditor may not maintain an action at law against the debtor and another for a fraudulent transfer of the property of the one to the other in pursuance of a conspiracy between them.

(Syllabus by the Court.)

Appeal from city court, general term.

Action by Jacob Hurwitz against Calman Hurwitz and Samuel Rouse for damages.  From a judgment of the city court (30 N. Y. S. 208) affirming a judgment for plaintiff, defendants appeal.  Reversed.

The complaint states, and the evidence shows, that on 7th January, 1893, judgment was recovered by plaintiff against defendant Hurwitz for $617.90; that defendant Hurwitz was owner of $1,500 worth of goods; that in pursuance of a conspiracy between the defendants, on 9th January, 1893, Hurwitz fraudulently transferred the goods to Rouse, in order to defeat satisfaction of plaintiff's judgment; that on the 18th January, 1893, plaintiff issued execution on his judgment, but by reason of said fraudulent transfer the goods could not be levied on, nor the judgment collected or satisfied,—to the alleged damage of plaintiff in the sum of $617.90, for which sum, with interest from 7th January, 1893, he demands judgment.  Defendants duly excepted to the denial of a motion, at the close of the case, to dismiss the complaint.  Plaintiff had a verdict for $617.90, for which sum, with interest and costs, judgment was entered.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

Abraham Gruber, for appellants.

Jacob Manheim, for respondent.

PRYOR, J. If this action be well brought, then we have the anomaly of a debt secured by two distinct and successive judgments,—one against the debtor; the other against the debtor and the defendant Rouse, to whom no responsibility for the debt is pretended to be imputed. Satisfaction of the later judgment would not exonerate defendant Hurwitz from the prior judgment, nor would satisfaction of the prior judgment discharge defendant Rouse from the obligation of the judgment against him; for, although the original debt of the defendant Hurwitz be included in the second recovery, yet the two actions are for diverse causes, and the two judgments proceed upon totally different and dissimilar grounds of liability. Such a preposterous consequence of the judgment before us suggests a formidable presumption against its validity. And, indeed, upon principle, it is impossible to uphold the judgment. The action is in tort. Now, invasion or infringement of the plaintiff's legal right is an essential and indispensable element in the constitution of an actionable wrong. "For the law to furnish redress, there must be an act which is wrongful, and it must take effect on some legal interest of the party complaining. Neither one, without the other, will suffice." Bish. Noncont. Law, § 22. "There must not only be loss, but it must be brought about by a violation of the legal rights of others," else it is damnum absque injuria. 1 Sedg. Dam. 39. "Damnum sine injuria—that is, damage unaccompanied by legal wrong—is not actionable at law." Broom, Com. Law, 74, 75. "No one, legally speaking, is injured or damnified, unless some right is infringed;" and this although the motive of the act complained of be ever so evil. Mahan v. Brown, 13 Wend. 261, 265; Phelps v. Howlen, 72 N. Y. 39, 46; Stevenson v. Newnham, 13 C. B. 285; Barnardiston v. Soame, 6 Howell, St. Tr. 1091. Hence, the definition that a wrong is "an invasion of a right, to the damage of the party who suffers it." Cooley, Torts, 98. So, the maliciously and fraudulently influencing a testator to alter his will affords no ground of action to the disappointed legatee, because he has been distributed in no legal right. And the defect of legal wrong is not supplied by allegation and proof that the act was done in pursuance of a conspiracy. Hutchins v. Hutchins, 7 Hill, 104; Savill v. Roberts, 1 Ld. Raym. 374; Bish. Noncont. Law, § 23, Similarly, an action will not lie to enforce a mere moral obligation (Ashley v. Dixon, 48 N. Y. 430, 432); nor in reparation of a seduction, if no right to service be infringed (Grinnell v. Wells, 7 Man. & G. 1033).

What, then, is the supposed right of the plaintiff, which, upon the pleading and proof, the defendants have violated? This only: That after judgment, but before execution, against him, the defendant Hurwitz, in conspiracy with the defendant Rouse, fraudulently disposed of his goods so as to defeat satisfaction of plaintiff's debt. But, before acquisition of a lien on his debtor's goods by execution or otherwise, a judgment creditor has no interest in those goods, which a judgment debtor injures, in a legal sense, even by a fraudulent transfer of the goods. In Moran v. Dawes, Hopk. Ch. 365, the complainant filed her bill to enjoin the defendant from consum-

mating his declared purpose of defeating her verdict of $9,000 for seduction by alienating his real property before entry of judgment. In refusing the relief, Chancellor Sandford thus stated the ground of his decision:

"Our laws have determined with accuracy the time and manner in which the property of a debtor ceases to be subject to his disposition, and becomes subject to the rights of his creditor. A creditor acquires a lien upon the lands of his debtor by a judgment, and upon the personal goods of the debtor by the delivery of an execution to the sheriff. It is only by these liens that a creditor has any vested or specific right in the property of his debtor. Before these liens are acquired, the debtor has full dominion over his property; he may convert one species of property into another, and he may alienate to a purchaser. The rights of the debtor and those of the creditor are thus defined by positive rules; and the points at which the power of the debtor ceases, and the right of the creditor commences, are clearly established. These rights cannot be contravened or varied by any interposition of equity."

Hence the rule that property of a judgment debtor, fraudulently transferred, may not be subjected to satisfaction of the judgment until the creditor acquires a lien upon it. Brinkerhoff v. Brown, 4 Johns. Ch. 671.

In Adler v. Fenton, 24 How. 407, the federal supreme court adopted the principle enunciated in Moran v. Dawes, supra, and thence deduced a conclusion decisive of the question in controversy, namely, that a creditor without a lien on the property of his debtor "cannot bring an action against his debtor, or against those combining or colluding with him to make dispositions of his property, although the object of those dispositions be to hinder, delay, and defraud creditors." The precise point in agitation has been adjudicated by other courts of high authority. Lamb v. Stone, 11 Pick. 527; Wellington v. Small, 3 Cush. 145; Moody v. Burton, 27 Me. 427; Smith v. Blake, 1 Day, 258; Green v. Kimble, 6 Blackf. 552. In Braem v. Bank, 6 N. Y. Supp. 846, our own supreme court, Fourth department, in an identical action, by unanimous decision of the full bench, made a similar determination; and in 127 N. Y. 508, 28 N. E. 597, on review of the case, the court of appeals affirmed the judgment, saying at page 515, 127 N. Y., and page 597, 28 N. E.:

"It is not seen that there was any invasion by the defendant of any legal rights of the plaintiff. A different question would have been presented if an existing lien of the plaintiff had been impaired or divested by the act of the defendant."

Upon another ground still the action fails of support. It is elementary that to maintain an action for fraud the plaintiff must prove, not only the wrongful act, but a consequent damage,—must show, in the technical language of the law, the damnum as well as the injuria. Benton v. Pratt, 2 Wend. 385. Now, in Moody v. Burton, supra, it was held, in an action like the present, that no legal damage could accrue to the plaintiff; the court saying, per Shepley, J.:

"How are the damages which a creditor may thus recover to be proved and estimated? The plaintiff had obtained no lien on the property conveyed, by attachment, judgment, or any other manner [a judgment merely is no lien on personalty],—had no special property in or claim to it. The only proof of loss or injury which he could make would be that his debtor had fraudulently

conveyed his property, without having received any value for it, and with the intent to avoid payment of his debt, and that he had no other means of obtaining payment. All other creditors could make the same proof. Upon such proof he could not be entitled to recover the amount of his debt, for to that he had no better title than other creditors. He has not, therefore, lost it. If it had not been fraudulently conveyed, it was as probable that it might have been applied to the payment of other debts as to his own. The debtor might have disposed of it fairly, and for a valuable consideration, or have lost it by accident or misfortune. The only loss or injury shown by the proof would be that he had been deprived of a chance or possibility of obtaining payment from that property. This would be stating his loss or injury too strongly, for he would still have the chance of attaching or securing it or its proceeds in the hands of the fraudulent holder. A jury would be authorized then to estimate the value only of his chance to secure it, and have it applied to the payment of his debt while in the hands of his debtor, for this only has he lost. There would be no data, tables, or other means afforded, by which such a chance could be estimated. The loss or injury would be too uncertain and remote for legal estimation."

To the same effect are the opinions of Morton, J., in Lamb v. Stone, supra, and Metcalf, J., in Wellington v. Small, supra.

The respondent cites to us two adjudications in support of the judgment: Penrod v. Morrison, 2 Pen. & W. 126, 8 Serg. & R. 522, and Quinby v. Straus, 90 N. Y. 664. The Pennsylvania decision is undoubtedly in point, but is sustained neither by argument nor authority; and, because of the defect of equity jurisdiction peculiar to that state, a remedy by common-law action may be thought indispensable. Still, we cannot assent to the doctrine of the case. The decision of our own court of appeals, if an actual adjudication of the point in question, would, of course, be conclusive. But, upon reference to the full report of the case, we find—First, that the point was not presented or considered at any stage of the action, and has therefore not been adjudged; and, secondly, that the plaintiff had acquired a lien by issue of execution prior to the mortgage, by foreclosure of which the goods were fraudulently appropriated by the defendant Straus. The execution was in April, 1877, and the mortgage in September, 1878. The apparent decision was disregarded by the general term in Braem v. Bank, supra, because of the unsatisfactory report of the case. We decline its authority, because the point here in contention was not before the court, and so was not determined, and because the court of appeals, in Braem v. Bank, expressly repudiated the principle supposed to have been propounded in Quinby v. Straus. We have discovered, however, an adjudication, not cited by counsel, which expressly affirms the validity of this action. Smith v. Tonstall, Carth. 3. The decision was in the reign of James II., before legal principles were as accurately ascertained and solidly established as at this day, in this country; and before, in the evolution of equity jurisdiction, the creditor's bill had been developed into its present efficiency. At all events, we have no hesitation in rejecting the authority. The inevitable conclusion, therefore, is that this objection is not to be maintained.

The plaintiff objects, then, that he is remediless. Not at all. Treating the transfer by his debtor as voidable, he may levy on the property in the hands of the fraudulent vendee. Waiving that, by recourse to the specific redress provided by law, he may, by cred-

itor's bill or supplementary proceeding, subject the property fraud-ulently transferred, or its proceeds, to the satisfaction of his judg-ment. These are the appropriate and the sufficient remedies for the wrong of which the plaintiff complains. Judgment and order of general term and trial term reversed, and judgment absolute for defendants, with costs. All concur.