ESTHER JAMES, Respondent, *v.* ADAM C. POWELL, JR., et al., Appellants.

First Department, January 18, 1966.

*Henry R. Williams* for appellants.

*Raymond Rubin* (*Raymond Rubin* and *Joseph A. Wolfert* on the brief), attorney for respondent.

STEUER, J. Plaintiff sued four defendants: Adam and Yvette Powell, and Gonzalo and Carmen Diago. The first cause of action is against defendants Powell only. It is that cause of action which is the subject of the motion to dismiss.

The allegations of this cause of action are that plaintiff obtained a judgment against defendant Adam Powell in the sum of $46,739.35, which judgment is unsatisfied except to the extent of $1,557.32; that at the time of the entry of judgment said defendant owned real estate in Puerto Rico of a value in excess of the amount of the judgment; and that thereafter, through the defendant Yvette Powell as attorney in fact, he transferred the property to the defendants Diago for the purpose of hindering and defrauding the plaintiff in the collection. It is further alleged that, as a consequence plaintiff has been unable to collect her judgment. We take these allegations to mean that the defendants connived to make the purported transfers with the intent and object of depriving plaintiff of the opportunity to issue execution against the property. We are not now concerned with whether plaintiff will be able to prove such an intent or purpose.

The argument made on behalf of the moving defendants makes no distinction between them. In brief, this argument is that no relief can be had because, under article 10 of the Debtor and Creditor Law, plaintiff, having no lien on the property conveyed, has no cause of action. However, while the complaint is no model of the pleader's art, it is quite clear that relief is sought not under the statute but at common law.

At common law, whoever by improper means interfered with the execution of a judgment was liable for the damage he caused to the judgment creditor (*Mott* v. *Danforth*, 47 Pa. 304; *Collins* v. *Cronin*, 117 Pa. 35). The right of action has been recognized and discussed at length by the United States Supreme Court in *Findlay* v. *McAllister* (113 U. S. 104) and is undoubtedly part of the common law of this State (*Quinby* v. *Strauss*, 90 N. Y. 664). In the *Quinby* case an action for damages was held maintainable against a judgment debtor and his attorney who conspired to put chattel mortgages on certain of the debtor's personalty to prevent those items from being subject to execution. Whatever question may have arisen can be traced to the following sources: cases dealing with the rights of the judgment creditor against transferees of property from the judgment debtor; the effect of the Debtor and Creditor Law; and the paucity of authority, particularly recent authority, on the subject.

The *Quinby* case in this State was followed by *Braem* v. *Merchants' Nat. Bank* (127 N. Y. 508). In that case a judgment debtor to the plaintiff confessed a judgment in favor of the defendant. The latter was also a bona fide creditor of the debtor. The defendant succeeded in issuing execution before the plaintiff did. The court held that, as defendant was a legi-

timate creditor, it had a perfect right to proceed against the debtor, and the fact that the debtor co-operated did not affect its right and denied recovery. In other words, any interference with plaintiff's effort to collect on the judgment was not tortious. And the opinion points out (p. 514) that were this not the fact the rule of the *Quinby* case would apply. And it has continued to be the law that where the recipient of property from a judgment debtor has come by it honestly, no common-law cause of action lies against him (*Northville Dock Corp.* v. *Aller,* 15 N Y 2d 498). That this has no bearing and certainly no adverse effect on the proposition that a cause of action lies for a tortious interference with the collectibility of a judgment appears clearly from the discussion in *Findlay* v. *McAllister* (*supra*). The court discussed its earlier decision, *Adler* v. *Fenton* (24 How. [65 U. S.] 407) a case generally relied on where recovery is denied following a transfer by a debtor. Mr. Justice Woods pointed out that as in the *Adler* case it was found that there were no tortious acts by the transferees, that decision did not preclude recovery where such acts appear.

That the Debtor and Creditor Law does not affect the relief sought in this complaint is quite clear. The purpose of the relevant sections is to provide complete and speedy relief to a creditor against a fraudulent debtor. It increases rather than restricts the instances where relief may be had (see *American Sur. Co.* v. *Conner,* 251 N. Y. 1, 7). And it specifically provides (§ 280) that in any case not provided for, the rules as to the effect of fraud shall govern. By no means can this statute be interpreted to take away from a creditor a remedy he had at common law.

Lastly, we are required to take note of a situation which applies to the defendant Adam Powell alone. It is the rare and exceptional case where a judgment creditor who has been frustrated in his efforts to collect his judgment will again sue that debtor in a further effort to collect the same debt. Generally, it would be a futile gesture, as the creditor already has what he would hope to gain by the suit, namely, a judgment. And there would be little reason to believe that he could obtain satisfaction of the second judgment where he had failed in regard to the first. However, the fact that such a procedure is for very good reason seldom initiated neither means nor implies that it may not be done. In *Quinby* (*supra*) recovery against the judgment debtor as one of the conspirators in a tortious conspiracy to interfere with the execution was allowed.

It is true that there are dicta in two cases (*Goldberg* v. *Korman,* 257 App. Div. 990, and *Kimmelsman* v. *Bishop,* 251 App.

Div. 724) that a second recovery is not permissible. We believe these to be unfortunate expressions. The situation is not to be confused with two pending actions for the same relief. There is, of course, a distinct and absolute prohibition against collecting on two judgments for a single debt. But there appears to be no valid reason why an uncollected judgment should be a bar. The holder of an unsatisfied judgment is expressly allowed to sue on the judgment itself wherever he can show a good reason for so doing (CPLR 5014, subd. 3).

In any event, this is neither a suit on the judgment nor for the same relief, and not even specifically to collect it. It is for damages resulting from a tort. The amount of the judgment is not the measure of the damages; it is rather the loss or expense caused by the interference (*Penrod* v. *Mitchell,* 24 Pa. 522). Conceivably, this could embrace the judgment itself (see *Quinby* v. *Strauss, supra*), in which event satisfaction of the judgment so obtained would also operate to satisfy the original judgment.

The order denying the motion to dismiss the first cause of action should be affirmed.

WITMER, J. (dissenting). I cannot agree that a cause of action at law exists in this State in favor of a judgment creditor, having no lien on specific property, against his judgment debtor and another for disposing or aiding in the disposition of the judgment debtor's property so as to hinder and impede, and possibly defeat, collection of the judgment. There are two aspects of the cause of action before us, to wit, (1) the action by the judgment creditor against the defendant Adam Clayton Powell, Jr., the judgment debtor, and (2) the action by the judgment creditor against the codefendant wife, Yvette Powell. Of course, the statute (CPLR 5014) expressly forbids an action upon a money judgment by the judgment creditor against his judgment debtor, except for limited purposes not here pertinent. Thus, as the majority holds, the action is not specifically to collect the judgment, but it is for damages many times in excess of the amount of the judgment, to be measured, say the majority, by the loss or expense caused by the interference, and conceivably embracing the judgment itself, "in which event satisfaction of the judgment so obtained would also operate to satisfy the original judgment."

It is not too early in this discourse to point out practical difficulties in that ruling, and to ask what happens in the event of partial satisfaction of the new judgment, assuming (1) that the payment is less than the original judgment and that the new judgment includes the judgment creditor's special losses and the expenses of securing it, (2) that the payment is in the

same amount as the original judgment, but the new judgment includes the judgment creditor's losses and expenses of obtaining it, or (3) that the payment is greatly in excess of the original judgment but not a complete satisfaction of the new judgment? Legislation or judicial decision could make provision for the measure of damages and the effect of payments (see General Obligations Law, § 15–103); but the present holding leaves much in doubt.*

The law of this State and many other States has long denied a right of action at law by a general creditor or a judgment creditor, having no lien on specific property, against his debtor or others for dispositions of the debtor's property with intent to defraud creditors. (*Adler* v. *Fenton*, 24 How. [65 U. S.] 407 [1860]; *Northville Dock Corp.* v. *Aller*, 15 A D 2d 947, affd. 15 N Y 2d 498; *Braem* v. *Merchants' Nat. Bank*, 127 N. Y. 508, affg. 53 Hun 638 opn. in 6 N. Y. S. 846; *Kaspin* v. *Thaw*, 262 App. Div. 861; *Goldberg* v. *Korman*, 257 App. Div. 990; *Kimmelsman* v. *Bishop*, 251 App. Div. 724; *Hurwitz* v. *Hurwitz*, 10 Misc. 353; *Sussman* v. *Sussman*, 115 N. Y. S. 2d 252; *Bradford* v. *Sonet*, 64 N. Y. S. 2d 876; *Bartol* v. *Bennett*, 56 N. Y. S. 2d 314; *Perkins* v. *Becker's Conservatories*, 318 Mass. 407, 414; *Moody* v. *Burton*, 27 Me. 427 [1847]; *Lamb* v. *Stone*, 11 Pick. [28 Mass.] 527 [1831]; and, see, *Findlay* v. *McAllister*, 113 U. S. 104, 114; 24 N. Y. Jur., Fraudulent Conveyances, § 128; 8 N. Y. Jur., Conspiracy, § 14; 15 C. J. S., Conspiracy, § 9, subd. b; Liability for Influencing Preference, Ann. 112 A. L. R. 1250.) These decisions are founded upon reason and policy, particularly well set forth in *Adler* v. *Fenton* (*supra*), *Hurwitz* v. *Hurwitz* (*supra*) and *Moody* v. *Burton* (*supra*). In *Moody* v. *Burton* (*supra*, pp. 432–435) the court reasoned in part as follows:

" Stripped of the allegations describing the manner, in which the alleged fraud was perpetrated, the declaration presents the common case of a fraudulent conveyance of property, made for the purpose and with the intent to defraud creditors.

" Creditors may consider such conveyances to be unlawful and void, and may cause the property to be applied to the payment of their debts by the use of any of the different legal and

---

*Note: For considerations as to the measure of damages under the majority holding see *Mott* v. *Danforth* (47 Pa. 304, 308 [1837]) and *Penrod* v. *Mitchell* (24 Pa. 522, 525 [1822]). In the *Penrod* case (p. 525) the court said: " If the value of the property assigned were not the standard, there would be no reason why damages beyond the amount of the judgment might not be given; which, I apprehend, could not be done, even if the value were of greater amount than the judgment." (And, see, *Moody* v. *Burton*, 27 Me. 427, 434–435 [1847].)

equitable processes applicable to their case and afforded by the law for that purpose. Some one of those processes has been found to be well suited to such a purpose, and by a proper selection and use of it, a creditor upon satisfactory proof may obtain payment from property so conveyed, or from its proceeds in the hands of a fraudulent holder.

" Omitting the selection of any of the long established remedies and the usual course of procedure, it is now proposed by an action on the case to seek, not the property fraudulently conveyed or its proceeds, but a judgment against those who were parties to the fraud, for the amount of damages, which the plaintiff can prove, that he has suffered by reason of such fraudulent conveyance. If such an action can be maintained in this, it may in every other case, where a fraudulent conveyance has been made of real or personal property with an intention to defraud creditors. If such an action upon such proof can be maintained by any one, it may be also by each creditor. There is nothing to give one a right superior to that of another. * * * The damages in such actions are not measured by proof or consideration of the benefit, which the wrongdoer may have derived from his wrongful or unlawful act. They are limited and measured only by the injury, which his conduct has occasioned. If therefore the principles which regulate this form of action are to be regarded and preserved, all creditors, who have been injured by a fraudulent conveyance of their debtor's property, must have an equal right to recover damages to the extent, to which each has thereby been a loser. And the effect upon a party receiving such a conveyance must be to subject him to damages in no degree regulated by the amount of property received, and limited only by the injury occasioned, it may be, to very numerous creditors similarly situated and injured. To place him in such a position the whole law regulating the rights and liabilities arising out of proof, that one has received a conveyance of a debtor's property with an intention to defraud his creditors, must be changed. That law, as it has been administered in civil actions does not punish a person for becoming a party to such a fraud. Does not punish the debtor and vendor, who has thus conveyed his property. It only deprives the purchaser of all benefit to be derived from it, by declaring his title thus obtained to be void, when it may injuriously affect the rights of creditors. It leaves the moral turpitude and other injurious effect upon creditors and upon society to be punished, as the sovereign power may provide. To allow each creditor to maintain an action on the case against a fraudulent purchaser to recover damages, supposing them to be capable of legal

estimation, would be to make use of a civil action for the recovery of sums, in the nature of a penalty, to the full amount of all, which could be recovered.   *   *   *   A debt due from one person cannot be satisfied by the recovery of damages from another person, unconnected with and a stranger to it, without some statute provision. The creditor would recover damages in satisfaction for an injury suffered, not on account of a debt due and in satisfaction of it.''

In addition to the above considerations the courts have found that there can be no satisfactory, workable measure of damages in an action of this nature. Until the creditor obtains a lien upon specific property of his debtor, he can have no more claim to an asset of the debtor than any other creditor. The asset may be lost to the debtor and the reach of his creditors in innumerable ways. What is the measure of plaintiff's damages resulting from the defendants' conveyance in the present case? She has lost only one chance to secure payment. She may still be able to reach the conveyed asset, if indeed it was fraudulently conveyed. Thus, the plaintiff's damage would be too uncertain and speculative to be the subject of computation and award. In any event the creation of such a cause of action should be done, if at all, by the Legislature. In *Adler* v. *Fenton* (65 U. S. 407, 413, *supra*) the court said: '' In the absence of special legislation, we may safely affirm, that a general creditor cannot bring an action on the case against his debtor, or against those combining and colluding with him to make dispositions of his property, although the object of those dispositions be to hinder, delay and defraud creditors.'' (And, see, *Moody* v. *Burton,* quoted *supra*.)

The majority place much reliance upon *Quinby* v. *Strauss* (90 N. Y. 664). That case was carefully considered in *Braem* v. *Merchants' Nat. Bank* (53 Hun 638 opn. in 6 N. Y. S. 846, 849–850, affd. 127 N. Y. 508, *supra*) and in *Hurwitz* v. *Hurwitz* (10 Misc. 353, 358–359, *supra*) and in the latter opinion it was pointed out that the judgment creditor in the *Quinby* case had obtained a lien before the defendants interfered with the property. Herein, in my judgment, lies the crux of the present discussion and the point which leads the majority to an erroneous conclusion. I think it clear that an action at law, as well as in equity, will lie in behalf of a judgment creditor against his judgment debtor and others for fraudulently disposing of an asset upon which the judgment had become a lien, or by any lienor against those who damage his security (*Quinby* v. *Strauss, supra; Van Pelt* v. *McGraw,* 4 N. Y. 110; *Yates* v. *Joyce,* 11 Johns. Ch. 136; *Findlay* v. *McAllister,* 113 U. S. 104, 111; *Adler* v. *Fenton, supra,* pp. 410–412; *Moody* v. *Burton,*

27 Me. 427, 435–436, *supra*). The same principle has been applied with respect to an owner whose goods were fraudulently obtained by others (*Moore* v. *Tracy*, 7 Wend. 229). But until the creditor has obtained a lien, no legal right that he possesses is violated by dispositions of the debtor's property; and no damage is provable. (See *Moody* v. *Burton, supra,* pp. 434–435.)

It is to be noted that the case of *Mott* v. *Danforth* (47 Pa. 304 [1837]) relied upon by the majority, was one of three cases of which the United States Supreme Court said in *Findlay* v. *McAllister* (*supra,* p. 114): "The three cases last cited extend the rule further than the exigency of the present case requires, and further than this court has been disposed to go." In *Collins* v. *Cronin* (117 Pa. 35) relied upon by the majority, the plaintiff lost, but that case did recognize the principle of *Mott* v. *Danforth* (*supra*). In the case of *Penrod* v. *Mitchell* (24 Pa. 522 [1822]) cited by the majority, the plaintiff was a judgment creditor, and the court held that the measure of damages should have been the value of the property fraudulently conveyed. In *Hurwitz* v. *Hurwitz* (10 Misc. 353, 358, *supra*) the court suggests that the reason for the Pennsylvania rule was "the defect in equity jurisdiction peculiar to that state, [wherein] a remedy by common-law action may be thought indispensable. Still we cannot assent to the doctrine of that case."

In *Ward* v. *Petrie* (157 N. Y. 301, 310) the court discussed the question before us, citing among other cases *Braem* v. *Merchants' Nat. Bank* (*supra*) and stated that it need not decide the question in that case. The *Braem* case was relied upon in the opinion of the Appellate Division in *Northville Dock Corp.* v. *Aller* (15 A D 2d 947, *supra*); and undoubtedly the Court of Appeals had in mind the *Quinby, Braem* and *Ward* cases when it unanimously affirmed the *Northville case* in 15 N Y 2d 498.

It should further be pointed out that the cause of action under consideration cannot be sustained on the theory of "*prima facie* tort." Such a cause of action may not embrace a traditional tort, as fraud, which is pleaded in the cause at bar; and, furthermore, damages in such an action must be pleaded especially (*Brandt* v. *Winchell*, 286 App. Div. 249, affd. 3 N Y 2d 628; and, see, *Moody* v. *Burton,* 27 Me. 427, 435–436). Moreover, such cause of action may only be invoked when the defendant acts solely with intent to harm the plaintiff, without justification or excuse, as distinguished from an intention merely to commit the act. (*Advance Music Corp.* v. *American Tobacco Co.,* 296 N. Y. 79; *Adler* v. *Fenton, supra,* p. 410.) The plaintiff has not alleged such a cause of action.

The plaintiff contends that in any event she is entitled to punitive damages in this cause of action. The right to punitive damages is basically dependent upon the existence of a cause of action for compensatory damages, even though the latter may be but nominal in amount (*Kiff* v. *Youmans,* 86 N. Y. 324, 331). Stated in another way, the claim for punitive damages does not constitute an independent cause of action. (See *Knibbs* v. *Wagner,* 14 A D 2d 987; *Gill* v. *Montgomery Ward & Co.,* 284 App. Div. 36, 41; *Dworski* v. *Empire Discount Corp.,* 46 Misc 2d 844; 1 Seelman, Libel and Slander [Rev. ed.], par. 137.) Since a valid cause of action for compensatory damages has not been alleged herein, the cause of action will not support a claim for punitive damages.

It should be observed, also, that most of the New York cases which have granted monetary damages for fraudulent conveyances have been equitable actions to set aside conveyances; and where the asset cannot be reconveyed, the courts have frequently awarded monetary damages in its stead, but in an amount not to exceed the value of the property fraudulently conveyed (see *Lowendahl* v. *Van Bokkelen, Inc.,* 260 N. Y. 557; *American Sur. Co.* v. *Conner,* 251 N. Y. 1, 7; *Hamilton Nat. Bank* v. *Halsted,* 134 N. Y. 520; *Valentine* v. *Richardt,* 126 N. Y. 272; *Quinby* v. *Strauss,* 90 N. Y. 664; *Post* v. *Browne,* 279 App. Div. 922, affd. 304 N. Y. 610; *Shugerman* v. *Sohn,* 255 App. Div. 866); but, as noted above, a creditor with a lien may maintain an action at law for interference with his specific security. Whether in an appropriate case punitive damages may also be awarded in such an action in the light of recent authorities (*I. H. P. Corp.* v. *210 Cent. Park South Corp.,* 16 A D 2d 461, affd. 12 N Y 2d 329; *Walker* v. *Sheldon,* 10 N Y 2d 401; cf. *Moody* v. *Burton,* 27 Me. 427, 433–434, *supra,* and *Penrod* v. *Mitchell,* 24 Pa. 522, 525, *supra*), need not be considered at this time.

The order of the court below should be modified to the extent of striking the first cause of action, and, as modified, affirmed, with costs and disbursements to the appellants.

McNALLY, J. P., and EAGER, J., concur with STEUER, J.; WITMER, J., dissents in opinion in which STEVENS, J., concurs.

Order entered on September 29, 1965, denying defendants' motion to dismiss the complaint affirmed, with $30 costs and disbursements to abide the event.